(19 App. Div. 297.)

CARLETON et al. v. LOMBARD, AYRES & CO.

(Supreme Court, Appellate Division, First Department. June 25, 1897.)

1. SALE—LATENT DEFECTS—ACTION FOR DAMAGES.
    In an action to recover damages for latent defects in certain oil sold by the defendants to the plaintiffs, rendering it unmerchantable, the plaintiffs proved a judgment against them in an action by parties to whom they had sold the oil, in which the question of its quality was submitted to the jury, and a verdict rendered against plaintiffs. They also proved that the defects in the oil could not have been discovered by inspection at the time of its delivery by defendant, and also that large quantities of the oil were refined by the defendant without the defects existing in the oil in question. Held, that this presented a question for the jury to determine, as to whether the unmerchantable quality of the oil was occasioned by lack of ordinary care in its manufacture.

2. SAME—MEASURE OF DAMAGES.
    When merchandise sold under a contract by a particular description is affected by latent defects, not discoverable on inspection, which render it unmerchantable, the vendee may recover from the vendor the amount of a judg-

ment recovered against him by his vendee, based on the defects of the merchandise, and also the expense of defending the suit brought by his vendee if the vendor has been notified of such suit and given an opportunity to defend it.

Appeal from trial term.

Action by I. O. Carleton and George B. Moffat against Lombard, Ayres & Co. Judgment for plaintiffs, and defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

B. F. Tracy, for appellants.
James C. Carter, for respondents.

INGRAHAM, J. The judgment of the court of appeals on the former appeal in this case has settled for us most of the questions involved. 43 N. E. 422. That was an appeal from a decision of the general term affirming a judgment dismissing the complaint, and in reversing that judgment the court of appeals discussed the admissibility and effect of the judgment in the case of Graham against this defendant, determined that such judgment was competent as evidence in this action, and determined what it was necessary for the plaintiffs to prove in addition to entitle them to recover. The facts of the case are substantially the same upon this trial as upon the trial which resulted in the judgment from which that appeal was taken, and as the opinion of the court of appeals in that case contains a statement of the facts of the case, with the questions involved, it will not be necessary to repeat them here. What we have to determine is whether upon this trial the rules as formulated by the court of appeals were correctly applied, and the case tried in accordance therewith. The court of appeals determined that this was a "contract by a dealer with a manufacturer, and is subject to the rules and principles that apply to executory contracts for the sale and delivery of goods when the parties occupy these relations to each other"; that in such a case, where the article to be delivered is sold by the owner or maker by the particular description by which it is known in the trade, it is a condition precedent to his right of action that the thing which he has delivered, or offers to deliver, should answer this description. The tendency of the recent decisions in this court is to treat such words as part of the contract of sale, descriptive of the article sold and to be delivered in the future, and not as constituting that collateral obligation which sometimes accompanies a contract of sale, and known as a "warranty," and that in this case "the plaintiff intended to buy and the defendant to sell an article of refined petroleum, which should not only correspond to the description in the contract, but should be free from latent defects arising from the process of manufacture, so as to constitute a thing which, in the commercial sense, would be of some use or value." Such being the obligation of the parties, the court then determined that the former judgment in favor of Graham & Co. against these plaintiffs was competent evidence. As to its effect as evidence the court says:

"It is quite true that the record would not prove that the defects were latent, or such as would not be disclosed by the inspection contemplated by the contract, since that question was not involved on the former trial, and the plaintiffs did not offer it for that purpose. It could not be excluded, however, because it did not prove the plaintiffs' entire case. If it proved any material fact in support of it, it was admissible. It did, we think, establish, as against the defendant, the fact that the oil, when delivered alongside the Corby, was unmerchantable, since that was the ground upon which the parties in Calcutta recovered the damages, as we must assume from the present condition of the record. The plaintiffs were, of course, bound to show by other proof that the defects which rendered the goods unmerchantable were latent, and such as would not be disclosed by the inspection."

The court then summarized its decision upon the questions presented as follows:

"(1) The defendant was bound to deliver an article of refined petroleum that was free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery, and that could have been avoided or guarded against in the process of refinement, or in the selection of raw material, by reasonable care and skill. (2) This obligation survived the acceptance, if the latent defects were such as would not appear upon an inspection to ascertain whether the oil delivered corresponded with that described in the contract. (3) The judgment roll in the former action was admissible in evidence for the purpose and upon the ground already stated. (4) The plaintiffs were entitled to show that the defendant knew the destination of the cargo of oil designated in the contract."

Upon a motion for a reargument in this case, the learned judge who wrote the opinion upon the appeal reiterated the rule laid down upon the decision of the case; holding that the plaintiff was entitled to show that the defendant knew the destination of the cargo of oil designated in the contract, as bearing upon the question of ordinary care.

"Since the defendant was bound, under the decision, to furnish an article free from such latent defects as could have been avoided by the exercise of ordinary care, that question was not foreign to the case. Ordinary care must be determined with reference to the facts and circumstances of the case, and it may well be that one degree of care might be exacted in case the oil was intended for domestic use, and another degree when intended to encounter the perils of transportation by a long sea voyage."

The court then sums up the result of its decision as follows:

"The defendant sold and received pay for a cargo of oil. It appears that the plaintiffs, who were the buyers, sustained a very large loss in consequence of the transaction, by reason, as they allege, of secret defects in the article, due to improper refinement, and which could have been avoided or guarded against by the defendant in the exercise of reasonable care. In holding that the defendant is bound to meet that issue of fact, we are unable to perceive, as the defendants' counsel seems to, that any injustice has been done, or any strain put upon reason or the rules of law governing the construction of contracts of this character." 149 N. Y. 605, 44 N. E. 185.

The liability of the defendant in this action must be measured by this judgment of the court of appeals, and what we have to determine is whether the facts that were held to be essential to the plaintiffs' right to recover were fixed. The contract was in evidence, and speaks for itself, and under that, as interpreted by the court of appeals—

"The defendant was bound to furnish an article of refined petroleum that was free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery, and that could have been avoided or guarded against in

the process of refinement, or in the selection of raw material, by reasonable care and skill."

The burden is thus placed upon the plaintiffs to prove that the article that was delivered to them was not refined petroleum, free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery, and that could have been avoided or guarded against in the process of refinement, or in the selection of raw material, by reasonable care and skill. The plaintiff proved a contract, they then proved the judgment in the case of Graham against these plaintiffs, and they proved also the charge to the jury upon the trial of that case which submitted the question presented as evidence tending to show the question settled by that judgment. Looking at the pleadings in the Graham case, with a consideration of the questions submitted to the jury in the charge of the court, it is perfectly apparent that the question in that case, which was determined by that verdict, was whether this oil, when it was delivered to the plaintiffs by the defendants, was a merchantable article, free from such impurities as rendered it valueless as oil. The question that was submitted to the jury was:

"Whether the condition of the oil, as ascertained when it arrived at Calcutta, was in consequence of some inherent defect in the oil as it was packed in the cans in New York; whether in consequence of acid and water and other foreign substances in the oil, by reason of improper refining process, the oil had deteriorated after it was shipped, it was found in the condition it was when it arrived in Calcutta,—then the plaintiffs had the right to reject it, and they are entitled to recover back the money they paid for it."

Again the court charged the jury that:

"If, on the other hand, considering the other testimony the condition the oil was in, you are not satisfied the water did get in on the ship, but that the condition it was in in Calcutta was caused by the fact that it was improperly refined, or improperly purified after it was refined, or that the acid or any other substance that remained in the oil was the cause of the rusting of the cans, and the condition it was in when it got to Calcutta, then the defendants have never complied with their contract, and never delivered to the plaintiffs the oil they agreed to deliver, and they are bound to repay to the plaintiffs the amount the plaintiffs paid them, assuming that the oil that they did deliver was according to the contract."

And at the request of the counsel for the defendants the jury were expressly instructed "that, if the jury find that the condition in which the cargo was found at Calcutta was due to sea damage, they must find a verdict for the defendants," and that the defendants were not chargeable for the result of any sea damage to the cargo on the voyage.

Now, in the face of that instruction to the jury, a verdict was found for the plaintiff; thus establishing the proposition that the oil was not of a merchantable character, because of the fact that in the oil at the time it was delivered by the defendants to the plaintiffs there was acid or water, or other foreign substances, by reason of improper refining process, that had caused the oil to deteriorate, and had thus caused it to be in the condition in which it was when it arrived in Calcutta. The verdict, therefore, in that case, conclusively settled, as between these parties, that the oil at the time it was delivered was defective and not according to the

contract; but the court of appeals held that the plaintiffs must also prove by independent evidence that such latent defects were of a character that would not be disclosed by an ordinary inspection provided for by the contract; that such defects could have been avoided or guarded against in the process of refinement by reasonable care and skill. We have examined the record in this case, and think that the evidence amply sustained the finding of the jury on that question. The judgment in the Graham case being conclusive evidence that the oil was not merchantable and free from improper substances when it was delivered in New York, the plaintiffs proved in the most satisfactory way that this condition of the oil could not be ascertained by inspection at the time of its delivery by the defendant. So this essential element of proof was supplied. The plaintiffs also proved that enormous quantities of this oil were refined yearly by the defendants' refinery and the other refineries in this country; that there was no difficulty in producing a grade of oil similar to that sold, free from these latent defects, and from those substances which rendered the oil unmerchantable; and that this defendant was engaged then and still continues to refine enormous quantities of this oil by the process, which it retained in a merchantable condition. This, we think, certainly presented a question for the jury to determine, as to whether the unmerchantable quality of this oil was occasioned by lack of care or skill in superintending the process by which the refinement of the oil was accomplished. We have it conclusively established by the judgment that the oil was not of a merchantable quality, and such as described in the contract, because in it there was contained water or acid, or some other substance which rendered it unmerchantable. We have the further proof that when the oil was delivered it was in such a condition that that defect could not be discovered by inspection, and thus, whatever the defect was, it was of such a character that the inspection provided for by the contract did not disclose it; and then we have also the fact that the process by which this oil was refined was in use by the defendants before and after the refinement of this cargo, and had produced oil in perfect condition, and fully up to the requirements of the contract. This proof left it a question for the jury as to whether the condition of the oil was not caused by a lack of ordinary care on the part of the employés of the defendants when they refined this particular oil; leaving in it, instead of removing from it, as they should have done, the substance which caused it to become unmerchantable. In the face of this evidence, it is impossible to see what could have caused this condition of the oil, but the fact that during the process of refining it, by some neglect of those engaged in the work, the acid or water was not removed. We have it thus satisfactorily established, by evidence which was sufficient to sustain the finding of the jury, that the oil, in the condition in which it was delivered to the plaintiffs, was not such oil as complied with the contract, and that such condition was caused by its having in it water or acid which rendered it unmerchantable; that, from the condition of the oil when delivered to the defendant, such defects were not such

as were disclosed upon the inspection provided for by the contract; that such defects were caused by some negligence in the process of refining the oil, which, if the same care and skill had been used as was used in the process of refining, both prior to and subsequent to the refinement of this cargo of oil, such defects would have been removed, and the oil would have complied with the contract; and this, under the rules established by this decision of the court of appeals, entitled the plaintiffs to recover.

The only other question is as to the measure of damages. It is well settled that the plaintiffs were entitled to recover an amount sufficient to compensate them for what they had lost in consequence of a breach of their contract by the defendant. That would be an amount that would put the plaintiffs in the same position that they would have been in had the contract been complied with. Now, if this contract had been complied with, this Graham suit would never have been brought, and the plaintiffs would not have been compelled to pay that judgment, and would not have been compelled to defend that lawsuit. What the plaintiffs were entitled to recover, therefore, was the amount of the judgment they had to pay, and their legal expenses in defending that lawsuit; this last becoming an item of damage because of the fact that the defendant had notice of the lawsuit, and did take part in its defense. The plaintiffs presented their claim, showing the necessary disbursements in this lawsuit. A bill of items was presented by them, and, after that had been marked, Mr. Moffat, the plaintiffs' attorney, said:

"With the idea of further shortening the proof of this mass of items, as every item of expenditure in the defense of this action, and before, too, were made under my personal directions as counsel, I would suggest that I may take the stand and testify from the memoranda which I have prepared from the books as to the items seriatim."

In response to that the defendants' counsel stated:

"You need not go into details. You just take the stand, and testify as to the necessity of these expenses."

Mr. Moffat took the stand, and testified as to these expenses generally, and as to the necessity, without objection; and no point was at all made that the necessity of these expenses, or that the actual making of them, was not proved. When the court came to charge the jury, it said to them:

"If the plaintiffs, however, have made out a case, within the rules laid down by me, they are entitled to a verdict at your hands as follows."

—Then stated the plaintiffs' claim, being the amount of the judgment in the Graham case, and interest thereon, cash expenditures by them in defending the Graham case, and interest, and cash expenditures by them prior to the commencement of the Graham case, making a total of $74,413.85. Now, there was no objection or exception to this statement, except that, after the jury had retired, counsel for the defendant said:

"We except to the charge of the court with reference to the rule of damages, claiming first that the true rule of damages in this case is the difference between the fair marketable value of the oil which was delivered to Carleton & Moffat under the contract, and the oil which should have been delivered at the time

and place of delivery, and that, if that rule be not adopted by the court, the amount of damages, under proper instructions, should be left to the jury, and that the court should not instruct the jury that they must either find for the defendants, or find in favor of the plaintiffs for a definite sum."

Now, it will be noted that there was no objection on the trial to the proof of the items of damage, and no claim that these amounts were not actually paid, or were not necessary in the defense of the Graham action, and no request was made by the court to submit any questions as to such items of such damage to the jury. It seems to us, from the record, that any objection to the various items, either as to their being sufficiently proved, or as to their being proper in the defense of the case, was waived, and that the only objection taken was as to the rule of damage adopted by the court, and as to the charge that the plaintiffs were to recover the amount paid in the defense of these actions. which had been actually paid. We think it clear that the court adopted the proper measure of damages, and that the exception of the defendant was not well taken.

Many other questions are presented upon the record, both as to the charge as made, to the refusals to charge, and to the objections of the defendant. We have examined them all, and think that none of them are of sufficient importance to justify a reversal of the judgment. The questions submitted to the jury were the questions determined by the court of appeals as open in the case. They were submitted fairly, by a charge which covered all of the case, and there was no error that affected any of these questions, or that even called for any further discussion.

We think that the verdict was sustained by the evidence, and that the judgment should be affirmed, with costs. All concur.