EDMUND LISSBERGER v. DAVID M. KELLOGG ET AL.

Submitted March 19, 1909—Decided June 7, 1909.

1. An agent to buy goods abroad is under a duty if he cannot procure the goods desired to so inform his principal; and if he buys an inferior grade of goods and ships them as a compliance with the order, he is liable to his principal for damages.

2. The rule contained in section 14 of the Sale of Goods act (*Pamph. L.* 1907, *p.* 311) that if the sale be by sample, as well as by description, it is not sufficient that the bulk of the goods correspond with the sample if the goods do not also correspond with the description, is merely an enactment of the common law rule as it existed before the statute.

3. Where goods are sold by description for the purpose of resale and do not answer the description, the vendee may recover in addition to his anticipated profits the damages which he is under obligation to pay to his sub-vendee when those damages are such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of its breach.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and PARKER.

For the plaintiff, *Tennant & Haight.*

For the defendants, *Edward S. Savage* (*Frederick H. Kellogg* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   The action is for damages caused by the failure of the defendants to deliver wool in accordance with the contract between them and the plaintiff. The plaintiff is a wool merchant in New York; the defendants are wool brokers and dealers at Buenos Ayres in the Argentine. In the summer of 1905 the plaintiff ordered some thirty bales of wool, of which ten bales were to be Lincoln, ten bales one-fourth blood and ten bales three-eighths. The order was accepted, but thirty-five bales were shipped instead of thirty. The invoice described the wool as composed of Lincoln one-fourth blood, three-eighths, one-half and five-eighths, and the specifications described them as ten bales Lincoln, eleven bales one-fourth blood, ten bales three-eighths Lincoln, four bales one-half Lincoln. This wool arrived in New York December 26th, 1905. Prior to its arrival and on December 5th the plaintiff ordered defendants to buy two hundred bales, one

half of which was to be three-eighths and half of which was to be one-fourth, and on December 18th ordered them to buy one hundred bales, half of which was to be three-eighths and half one-fourth. These orders were duly accepted and the wool shipped in January, arriving in New York in February. The two lots of two hundred and one hundred bales were sold in advance of their arrival by the plaintiff to the Cleveland Worsted Mills of Cleveland, Ohio, and shipped through to them directly from the steamer in bond. The wool proved to be inferior in quality to the description. The case was tried upon the theory that the plaintiff could only recover in case he was dealing with the defendants as principals. It was apparently supposed by counsel that there could be no recovery if the defendants were the brokers or agents of the plaintiff, and the trial judge charged the jury that if they were acting as brokers the defendants were entitled to the verdict. It is now insisted that there was no evidence which would justify the finding that the defendants were principals, or, if that is not so, that the weight of the evidence is so decidedly in favor of the view that they were brokers that the verdict should be set aside. We find in the sworn statements made by the defendants to accompany the invoices evidence which would justify the conclusion that they were contracting as principals and as vendors. There is persuasive evidence to the contrary, but we cannot say that the weight preponderates on that side to such an extent that we ought to disturb the verdict. We do not mean to be understood, however, as expressing approval of the view adopted at the trial that the defendants were not to be held liable in damages if they were acting as brokers. Their contract in that case would indeed be different from the contract between a vendor and purchaser, but it has been held that where agents are to buy goods abroad they are under the duty not only of buying as cheaply as possible and of shipping the goods when bought, but must also inform their principal if they are unable to procure the goods required and to take reasonable care to send correct information. They may, if they are acting as brokers and are unable to procure the goods desired, so report

to their principals, but they cannot buy an inferior grade of goods and ship them as a compliance with the order without being liable to their principal for damages. The difference between the case of vendor and purchaser and of a foreign broker and his own principal is not that in one case there is a liability for damages and in the other no liability; the difference is in the measure of damages in the two cases. *Cassaboglou* v. *Gibb*, 11 *Q. B. D.* 797.

The defendant next contends that the sale in this case was a sale by sample, and so far as the three hundred bales is concerned, that they were equal to the sample of thirty-five bales; that so far as the thirty-five bales was concerned, they were a mere sample shipment, and the quality was immaterial. We think the defendant is wrong in both contentions. The letter ordering the first shipment distinctly said that the wool was to be one-third Lincoln, one-third one-fourth blood and one-third three-eighths, and this order was accepted. It was clearly a sale by description. So, too, the cables did not order the wool similar to the sample lot; in fact, it would have been impossible, for at the time the cables were sent the first shipment had not arrived in New York. Both the cables ordered wool half three-eighths and half one-fourth. This also was clearly a sale by description, and the trial judge should so have charged. Instead of doing so he charged that it was for the jury to say whether the plaintiff was to get the grades generally known to the trade by the description or whether he was to get the same kind or similar kinds that he had been receiving in prior years. This error, however, was injurious to the plaintiff and not to the defendants. He further charged that "the rule as to selling by sample is this: That what is sent thereafter must substantially comply with the sample, and if it does not, the purchaser is under no obligation to keep it." As applied to the present case this charge also was inaccurate. The true rule prior to our codification of the law relating to sales is thus stated in the last English edition of *Benjamin on Sales* 616: "The implied condition that goods bought under specified commercial description should conform therewith is not excluded by the fact that the

sale is by sample, or even after an inspection of the bulk. A sample is looked on in such case as a mere expression of the quality of the article, and not of its essential character, and notwithstanding the bulk be fairly shown, or agree with the sample, yet if the bulk does not reasonably answer to the description the seller is liable." Citing *Mody* v. *Gregson, L. R., 4 Ex. 49.* Among the cases cited in Benjamin, *Azemar* v. *Cassella, L. R., 2 C. P. 431, 677,* is similar to the present case. The same rule of law is stated in the Sales act of 1907 (*Pamph. L., p. 316, § 14*). This act did not take effect until after the transactions now in question, but it was a mere codification of the then existing law in this respect. The charge of the court, while erroneous, was injurious only to the plaintiff, and the defendant is not injured thereby.

The next complaint is that the plaintiff could not accept the goods and sue for breach of the warranty. It is enough to say as to this that the law is settled to the contrary. *Benj. Sales* (*5th Eng. ed.*) 1001; Sales act of 1907 (*Pamph. L., p. 337, § 69b*).

The plaintiff was allowed to recover the following items— *first,* the difference between the purchase price paid by him and the amount received on the sale; *second,* the loss of profits on the sale to the Cleveland Worsted Company; *third,* damages paid that company to settle its claim against him; *fourth,* freight on wool shipped from Cleveland to Boston for resale. It was proper to include all of these items in the plaintiff's claim for damages if the case was one between vendor and vendee, except perhaps the freight from Cleveland to Boston. The subject was dealt with by the writer of this opinion in *Lodge & Shipley Co.* v. *Binnse, 24 N. J. L. J.* 430. That they were entitled to recover profits on the resale is hardly open to question. It was held in that case, on the authority of *Borries* v. *Hutchinson, 18 C. B. (N. S.) 445; Die Elbinger Actien Gesellschafft* v. *Armstrong, L. R., 9 Q. B. 473,* and *Grebert-Borgnis* v. *Nugent, 15 Q. B. D. 85,* that damages which the vendee was under obligation to pay to a sub-vendee were also recoverable when they are such as may reasonably be supposed to have been in contemplation of both

parties at the time they made the contract as the probable result of its breach. The freight paid on the shipment of the wool from Cleveland to Boston could only be recoverable if that expense was reasonably incurred in the effort to market the goods which had proved inferior to the description. No objection was made at the trial to this portion of the judge's charge, and it is therefore not open to the defendant on this rule.

The rule is discharged, with costs.