CZARNIKOW-RIONDA COMPANY, Respondent, v. FEDERAL SUGAR REFINING COMPANY, Appellant.* (Actions Nos. 1–8, inclusive.)

First Department, June 23, 1930.

*Henry W. Taft* of counsel [*F. Sims McGrath, Catherine Noyes Lee* and *James F. Warden* with him on the brief; *Cadwalader, Wickersham & Taft*, attorneys], for the appellant.

*Garrard Glenn* of counsel [*James F. Dealy* with him on the brief; *Glenn, Alley & Geer*, attorneys], for the respondent.

MARTIN, J. The judgment appealed from herein represents the amount which the plaintiff paid in settlement of seven claims, three of which were reduced to judgment, all growing out of a breach

of contracts to deliver fine granulated sugar. Every question here under consideration has been considered in prior litigations upon which this action is based, with the exception of the damages recoverable herein.

The plaintiff entered into a contract with the defendant, the technical nature of which is disputed by the defendant, but in substance to deliver to plaintiff fine granulated sugar. That the sugar delivered was not fine granulated sugar has been held by four different courts and has been proved herein by overwhelming evidence. The greater part of this voluminous record consists of testimony on that subject which is now either admitted or in any event so firmly established that it cannot be successfully disputed.

The authority of Frank C. Lowry, general sales manager, to act for the defendant is also so clearly established by the record that there can be no serious dispute on that subject.

The complaint is based on a breach of warranty regardless of whether the contract be determined as an ordinary barter or what in the sugar trade is known as a " tolling contract."

Prior to the year 1919 the plaintiff confined its activities in the refined sugar trade to export business and domestically was interested in the sale of raw sugar only. The rise in the price of refined sugar in the latter part of the year 1919 and early part of 1920, however, attracted plaintiff's attention, and it then entered into the contracts here under consideration. By the terms of these contracts the defendant was to ship fine granulated sugar to customers designated by plaintiff. Although the defendants agreed to ship fine granulated sugar, it was discovered upon inspection that the sugar shipped was not the grade of sugar that was to be delivered in compliance with the contracts. The sugar was then rejected and the contracts rescinded.

The buyers filed claims against the plaintiff and several commenced actions. Three of these actions were disposed of by trial and the other claims were settled. In the actions which were tried it was conclusively established that the sugar delivered was not as contracted for and that there was a breach of warranty. The defendant was given an opportunity to defend these actions and at first joined with the plaintiff, but afterwards refused to take part in the defense or to complete the settlements which it had not only consented to but advised the plaintiff to make.

The issues are fully stated in the opinion of the trial justice, and it is unnecessary to repeat each issue and the reasons for reaching a determination thereon. The only question now requiring our consideration appears to be the question of damages.

The evidence established beyond doubt that the defendant

knew that the contracts were made as a basis for subcontracts. The arrangements were in writing and provided for shipment to plaintiff's various customers. The defendant suggested that it arrange for the routing so that the customers would receive the sugar direct from the defendant.

The plaintiff was entitled to receive the sugar contracted for, and upon discovery that it was not as warranted, had a right to rescind the contracts. In *Standard Casing Co.* v. *California Casing Co.* (233 N. Y. 413) the court said: " Title passes upon shipment, though subject to the right of rescission upon the discovery of defects."

The rule of damages in such a case was stated in *Carleton* v. *Lombard, Ayres & Co.* (19 App. Div. 297; affd., 162 N. Y. 628). This court therein said (at p. 304): " The only other question is as to the measure of damages. It is well settled that the plaintiffs were entitled to recover an amount sufficient to compensate them for what they had lost in consequence of a breach of their contract by the defendant. That would be an amount that would put the plaintiffs in the same position that they would have been in had the contract been complied with.

" Now, if this contract had been complied with, this Graham suit would never have been brought, and the plaintiffs would not have been compelled to pay that judgment, and would not have been compelled to defend that lawsuit. What the plaintiffs were entitled to recover, therefore, was the amount of the judgment they had to pay and their legal expenses in defending that lawsuit, this last becoming an item of damage because of the fact that the defendant had notice of the lawsuit and did take part in its defense. * * * When the court came to charge the jury it said to them: ' If the plaintiffs, however, have made out a case within the rules laid down by me, they are entitled to a verdict at your hands, as follows: ' Then stating the plaintiffs' claim, being the amount of the judgment in the Graham case, and interest thereon, cash expenditures by them in defending the Graham case and interest, and cash expenditures by them prior to the commencement of the Graham case, making a total of * * *.

" It seems to us * * * that the only objection taken was as to the rule of damage adopted by the court and as to the charge that the plaintiffs were to recover the amount paid in the defense of these actions which had been actually paid. We think it clear that the court adopted the proper measure of damages and that the exception of the defendant was not well taken."

In *Mack* v. *Snell* (140 N. Y. 193) it was said: " In respect to the judgment for the defendant on his counterclaim, we perceive no

legal error. It represents the value of the contract to the defendant in case the plaintiffs had performed, measured by the difference between the price agreed to be paid by the defendant for the shears, and their market value if made according to the contract. The claim that as the title to the shears manufactured was in the defendant, the value of the materials should have been deducted, is not presented by any finding or exception, and it cannot be affirmed upon this record that the materials, in the condition in which they then were, were of any value to the defendant."

When the buyers who purchased from plaintiff examined the sugar and found it was not as warranted, they were also within their rights in rescinding the contracts and suing for damages. (*Standard Casing Co.* v. *California Casing Co., supra.*)

With reference to the claims settled, it was established not only that there was a breach of warranty but that the settlement in each case was advantageous to the defendant and was acquiesced in by Mr. Lowry who represented the defendant and had full authority to do so

The plaintiff is entitled to recover the amount it paid to its buyers or customers in payment of the judgments obtained against it and the additional sum paid in settlement of the claims made by other buyers.

In addition the plaintiff is entitled to reimbursement for counsel fees and expenses incurred in defending the actions brought against it for breach of warranty.

In *Lord & Taylor* v. *Yale & Towne Mfg. Co.* (230 N. Y. 132) it was said: " The rule is that ' If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered, but for al reasonable and necessary expenses incurred in such defense.' (*Inhabitants of Westfield* v. *Mayo,* 122 Mass. 100, 109; *Consolidated Hand-Method Lasting Machine Company* v. *Bradley,* 171 Mass. 127; *Boston Woven Hose & Rubber Company* v. *Kendall,* 178 Mass. 232.) "

The rule of damages to be applied to these actions was considered by this court in *Lamborn* v. *Czarnikow-Rionda Co.* (221 App. Div. 737).

Mr. Justice Finch there said: " A plaintiff who establishes a cause of action is entitled to recover all the damages of which the wrong complained of is the proximate cause. If it appears that

the special damage claimed was fairly within the contemplation of the parties when the contract was entered into, there is no reason why it should not be recovered."

In that same opinion, speaking for this court, he also said: " By reason of the breach of warranty upon which the plaintiffs' cause of action is based, the plaintiffs have been compelled to defend these various actions. That in two of the actions the complaint was finally dismissed does not make the cost of defending the same arise any the less out of the breach of warranty. * * * The plaintiffs are obliged, however, to defend the suits of their vendees against them and the counsel fees incurred were an additional item caused by reason of the breach of warranty, which are recoverable by the plaintiffs in addition to their general damage. *If the plaintiffs prove a breach of warranty and that the resales were within the contemplation of the parties, the plaintiffs are then damaged not only the difference in value of the goods but the expense of defending the suits against them.*"

The referee in *Wall Commission Co.* v. *Czarnikow-Rionda Co.* wrote a very interesting opinion, giving consideration to many of the issues which are now before us for review. That case was affirmed in 208 Appellate Division, 726.

We are of the opinion that the proper measure of damages was applied in this case and that the judgment and order should be affirmed, with costs.

DOWLING, P. J., and O'MALLEY, J., concur; FINCH and McAVOY, JJ., dissent.

FINCH, J. (dissenting). An analysis of this record seems to me to negative any implication that the parties contemplated a liability for special damage on the part of the defendant. The principal, and simple, question upon this appeal relates to damages; more specifically, whether the parties contracted at the time of the making of the contract, or subsequently, that other than the ordinary rule of damages should apply to this contract for the rendition of a usual service by the defendant upon a standard article, namely, the raw sugar furnished by the plaintiff. There are certain outstanding facts which to my mind clearly negative any implication that the parties contemplated a liability involving special damages. Briefly, some of these facts may be enumerated as follows:

*First,* both parties practically concede, and the parties themselves were particular to emphasize in their correspondence, that the contracts between the parties hereto were not sales contracts but were contracts for services, known as toll or milling contracts,

whereunder the plaintiff delivered to the defendant raw sugar, which the defendant refined at a small charge for service.

*Second,* the original contracts between the parties were for the delivery by the defendant of sugar for export. In fact the president of the plaintiff conceded that prior to April 21, 1920, the dealing of the plaintiff in refined sugar consisted solely of purchases for export.

*Third,* the contracts in suit upon which the plaintiff claims the right to apply the rule of special damage were made on September 15, 1919, March 8, 1920, and April 21, 1920, and it was not until May 18, 1920, June 22, 1920, and July 2, 1920, respectively, that defendant was instructed to ship sugar to domestic customers of the plaintiff.

The rule of law is clear that in order to recover special damages based upon loss of profits, it must appear that at the time the contract was made the parties had in mind a possibility of such damage and contracted with reference thereto. Mere knowledge of the likelihood of a sale arising out of a known intention to resell is insufficient. (*Globe Refining Co.* v. *Landa Cotton Oil Co.,* 190 U. S. 540, 544; *Setton* v. *Eberle-Albrecht Flour Co.,* 258 Fed. 905, 907.) Since the only information had by the defendant of a sale by the plaintiff was through instructions received in each instance subsequent to the making of the contracts between the parties, this is a very important fact, taken in connection with the other facts contained in this record, in arriving at the conclusion that in the case at bar the parties did not contract so as to permit a recovery of special damages following a breach. In addition, the conclusion applies with even more force where, as in the case at bar, the contracts were milling contracts and not sales contracts.

If it were not for the coincidence that the defendant was good enough to give an option to the plaintiff to sell to the domestic trade and also to oblige the plaintiff by shipping the goods directly to those who subsequently purchased of the plaintiff, I do not believe that the plaintiff would have even made a claim to apply other than the ordinary rule of damage for breach of contract. In the ordinary case, a seller who sells to a buyer who purchases for resale, makes as much profit as he reasonably can, and his buyer upon a resale does likewise. The ordinary intermediate buyer, in addition to obtaining his subbuyer, takes the risk of loss of profit should the goods he is selling be rejected because of failing to correspond to his description. In the case at bar the plaintiff, asking to be regarded as a purchaser from the defendant, as seller, nevertheless limits the defendant to a profit of less than two cents a pound arising out of a small charge for services rendered

in refining the sugar, while it exacted what profit it could. In other words, plaintiff claims it undertook itself no risk of loss of profit on resale in the event of rejection because of lack of quality under each toll contract, but that in effect it received, for no other consideration than payment for services in refining the sugar, what in effect amounted to an insurance policy with each lot of sugar refined against any loss of profit, approximating in the case at bar twenty-five cents a pound, under a contract whereunder the defendant received less than two cents a pound in payment for services actually rendered. Upon this record also there appears nothing which prevented the plaintiff from having all the inspection that it desired in order to ascertain whether the refined sugar complied with the contract. When the plaintiff requested the defendant to send goods directly to the subbuyers, defendant did not, by acceding to this request, assume a greater liability for damage than if the delivery had been directly to the plaintiff as contracted for. Clearly the contracts as first made did not contemplate special damage, and when the plaintiff asked the first favor, namely, for the privilege and option to sell to the domestic trade, and subsequently asked the second favor, namely, that the defendant should ship directly to the subbuyers of the plaintiff, I am unable to bring myself to the conclusion that these two favors should be construed into a contract whereby the original milling contract was altered so as to make a contract between the parties that would make this defendant liable for special damages.

The kindness of the defendant's employee, Lowry, to his friend, Costello, plaintiff's representative, cannot be construed to create a liability after a breach of the contract, which did not exist before. If special damages were not contemplated when the contracts were made, subsequent acts of the parties do not create a liability. (*Chapman* v. *Fargo*, 223 N. Y. 32; *Globe Refining Co.* v. *Landa Cotton Oil Co.* 190 U. S. 540, 543.)

In *Lamborn* v. *Czarnikow-Rionda Co.* (221 App. Div. 737) the court was considering only the sufficiency of the allegations of a pleading and not whether the evidence at the trial sustained these allegations.

The judgment under the facts disclosed upon this record should be modified by reducing the amount of the recovery to the difference between the respective market values of the sugar.

McAvoy, J., concurs.

Judgment and order affirmed, with costs.