ROBERT A. REICHARD, Inc., v. EZL. DUNWOODY CO.

Civil Action No. 1070.

District Court, E. D. Pennsylvania.

May 12, 1942.

154

Fred B. Gernerd, Claude T. Reno, and Morris Perkin, all of Allentown, Pa., for plaintiff.

Paul Freeman, of Freeman, Fox & Steeble, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action by a purchaser of cod liver oil against his vendor to recover damages for breach of warranty.

Plaintiff's evidence showed that it was a manufacturer of and dealer in fertilizer and poultry feeds. On October 30, 1935, plaintiff purchased from the defendant one hundred thirty-gallon drums of cod liver oil imported by defendant from Norway. At the time plaintiff ordered this oil, defendant's salesman orally warranted that it contained 150 units of Vitamin D per gram. This order was confirmed in writing by defendant the following day.

Plaintiff subsequently sold one drum of this oil to one Landes, a poultry farmer, under an expressed warranty that it contained 170 units of Vitamin D per gram. Landes raised his poultry in what is known as "confinement". Under this method the poultry are kept indoors and are not exposed to sunlight, with certain resulting advantages. In order to supply the Vitamin D which is essential to proper calcification of the bones of the poultry and which they normally receive from sunlight, it is necessary to include in their feed cod liver oil or some other source of that vitamin. The formula for feed employed by Landes, based upon recommendations of the Agricultural School of Pennsylvania State College, called for 78 units of Vitamin D per 100 grams of feed. In his use of the cod liver oil purchased from plaintiff Landes in mixing his feed computed the proportion of oil necessary to supply the formula requirement on the assumption that it contained 170 units of Vitamin D per gram as warranted by plaintiff.

After using this mixture for a short period of time, Landes found a substantial decrease in the productivity of his laying hens and evidence of rickets and improper bone calcification in his poultry. He wrote to plaintiff advising it of his findings and requesting a correct report of the Vitamin D content of the cod liver oil it had sold him. Plaintiff replied that the oil was guaranteed to contain a minimum of 170 units of Vitamin D per gram. Landes subsequently wrote to plaintiff advising it that tests indicated that the cod liver oil contained less than 50 units of Vitamin D per gram, and made claim on plaintiff for damages for loss of egg yield and death of a number of his chickens. Plaintiff notified defendant of the Landes complaint and was advised by defendant that it felt that there was nothing wrong with the oil and that "we are willing to stand back of the 150 International units of Vitamin D guarantee."

On March 4, 1938, Landes instituted an action of assumpsit against plaintiff in the Court of Common Pleas of Lehigh County, Pennsylvania, to recover damages for breach of warranty as to the Vitamin D content of the cod liver oil which plaintiff had sold him. Plaintiff notified defendant to come in and defend this action because plaintiff's warranty had been made in reliance upon defendant's similar warranty to it. Defendant declined to defend that action, which went to trial and resulted in a verdict in favor of Landes against plaintiff in the amount of $810.

Thereafter plaintiff instituted the present action against defendant for breach of warranty, seeking to recover as damages the amount of the judgment recovered by Landes against it, the counsel fee it paid for the defense of that action, and its other expenses incurred in the preparation of the defense to that action. In the present action Landes testified as a witness for plaintiff and described the harmful effect on his poultry resulting from the deficiency of Vitamin D in the cod liver oil in question. Plaintiff further produced expert testimony showing the Vitamin D requirements of poultry raised in confinement. The testimony of an expert analyst who had tested a sample of this oil was that it contained less than 50 units of Vitamin D per gram. Plaintiff further produced expert testimony that there would be no appreciable difference with respect to the health of poultry fed by the formula used by Landes if the preparation of cod liver oil was computed on the assumption that it contained 170 units of Vitamin D per gram if it in fact contained 150 units, but that if it in fact contained less than 50 units this difference in Vitamin D content might well have been the cause of the results experienced by Landes. Landes further testified in this action that it was only after his use of the cod liver oil which he had purchased from plaintiff that his poultry developed the ailments of which he complained.

To plaintiff's claim defendant asserted a great many defenses, both factual and legal. The principal factual defenses of the defendant were that the defendant's salesman did not in fact assert that the Vitamin D content of the cod liver oil was 150 units per gram; that even if such assertion had been made, no reliance was placed thereon by plaintiff; and that the alleged deficiency in the cod liver oil was

not the cause of the disease and death of Landes' poultry. The principal legal defenses of the defendant were that the parol evidence rule barred any action on the alleged oral warranty; that plaintiff failed to introduce in this case the best evidence of the judgment in the action against it by Landes and accordingly could not recover the amount thereof; that the alleged warranty given by defendant to plaintiff was a different warranty than that given by plaintiff to Landes and hence plaintiff's loss was not the result of defendant's breach of warranty; that the damages claimed by plaintiff were too remote to have been contemplated by the parties and hence were not recoverable; that in no event should plaintiff be entitled to recover counsel fees or expenses of defense; and that there was no proper proof as to the necessity for, or the reasonable value of, such expenses.

■ On the question of whether the defendant warranted the cod liver oil to contain 150 units of Vitamin D per gram, the evidence of the plaintiff is most convincing. In addition to the testimony that defendant's salesman made such warranty as to the oil as an inducement to the plaintiff to purchase it rather than the product of competitors, the statement by defendant to plaintiff in a letter after the differences with Landes had arisen, that defendant was willing "to stand back of the 150 International units of Vitamin D guarantee", offers strong corroboration of the existence of the express warranty on which this action is based. It also seems clear that the statement as to the Vitamin D content of the oil by defendant's salesman was made with the intention that plaintiff rely thereon, and that plaintiff did in fact rely thereon in ordering the oil from the defendant.

■ The parol evidence rule relied upon by defendant to preclude recovery on this oral warranty has no application under the facts of this case. The agreement to purchase the oil was oral, as was the warranty. The written instrument which the defendant seeks to set up as a written agreement of sale is merely a confirmation of the order prepared and mailed by the defendant's salesman to plaintiff the day after the sale had been consummated. It did not purport to be a contract, was not signed by the plaintiff, and in no way bars plaintiff's action on the oral warranty made by the defendant.

The most difficult factual issue is whether the Vitamin D deficiency in the cod liver oil was the cause of the abnormal death rate of Landes' chickens for which he recovered damages against the plaintiff. On this question there was a mass of expert testimony presented by plaintiff and a rigorous cross-examination of the experts was made by the defendant. It appears clear from tests made of the cod liver oil in question that it in fact contained less than 50 units of Vitamin D per gram, but the question remains as to the causal connection between that deficiency and the death of Landes' poultry. It may be that defendant, having had notice of and opportunity to defend the action of Landes against plaintiff, should be bound by the verdict in that case as to the cause of the death of Landes' poultry. I do not so hold, however, because I find from the evidence produced in the present case that it was the Vitamin D deficiency in the cod liver oil sold by plaintiff to Landes which caused the loss for which he recovered damages against the plaintiff. This finding is based not merely upon the expert testimony in this case, but also upon the fact that the sickness and abnormal death rate of Landes' poultry occurred only after he began using plaintiff's cod liver oil in preparing his feed.

Defendant's further contention that it cannot be held liable to plaintiff for the damages plaintiff sustained as a result of the Landes action because plaintiff's warranty to Landes was different and greater than defendant's warranty to plaintiff cannot be sustained. It is true that defendant's warranty was that the cod liver oil contained a minimum of 150 units of Vitamin D per gram, whereas plaintiff's warranty to Landes was that it contained a minimum of 170 units per gram. Whether or not this difference was the result of a typographical error, as plaintiff testified, the expert testimony establishes that if the oil had contained 150 units, the deficiency of Vitamin D in the formula used by Landes which would have resulted from his computing his proportion of cod liver oil on the assumption that it contained 170 units would not have been sufficient to cause the sickness and abnormal death rate of his poultry. Accordingly, plaintiff would have sustained no loss if the Vitamin D content of the oil was the 150 units per gram instead of less than 50, and the fact that plaintiff's warranty to Landes was of 170 units per gram does not relieve defendant of the ultimate and direct responsibility for that loss.

Defendant has raised the further question that plaintiff has failed to offer the best evidence of the judgment in the action by Landes against plaintiff, to wit, the record in that action. It appears, however, that in an effort to avoid the expense of having that entire record transcribed, counsel for plaintiff, early in the trial of this case, asked counsel for defendant to admit that such an action was brought on the alleged guarantee and that it resulted in a verdict by Landes against the plaintiff. Defendant's counsel admitted this of record, carefully reserving his right to dispute its relevancy and seeking leave to refer to the contents of any of the papers on file in that proceeding. During the balance of the trial both parties appear to have regarded the matter as if the proceedings of the Landes case were incorporated in this record, and indeed defendant has argued in its brief several matters based upon the different items of claim made by Landes and the extent to which the jury in that case rejected or allowed recovery on those items. Under these circumstances, defendant may not now be heard to raise for the first time that the best evidence of the Landes judgment was not produced.

The remaining questions deal with the damages to which plaintiff is entitled. Defendant contends that no damages are recoverable because they are too remote to have been the natural and foreseeable consequence of its breach of warranty. The settled law is to the contrary. In 5 Williston on Contracts, Revised Edition, § 1394, it is said: "Another kind of case which has given rise to the question of consequential damages is where a buyer who purchases goods with a warranty resells them with a similar warranty and, the goods proving defective, is compelled to pay or is liable for damages. He is allowed to recover these damages over against the person from whom he originally bought them."

The same rule has been applied by the Supreme Court of Pennsylvania in allowing, in an action for the price of goods sold, a counterclaim for the amount of defendant's liability to a subvendee to whom defendant had resold the goods with a similar warranty, even before this latter claim had been liquidated. Wolstenholme, Inc., v. Jos. Randall & Bro., Inc., 295 Pa.

131, at page 136, 144 A. 909, 911, in which the court said: " 'One who warrants goods to possess a certain quality is held to an extensive liability for consequential damages for breach of the warranty.' 3 Williston on Contracts, p. 2472; 2 Williston on Sales, p. 1541, § 614; Griffin v. Metal Product Co., 264 Pa. 254, 107 A. 713. 'Where goods are sold with a warranty to a dealer it must be assumed that the dealer may resell them with a similar warranty to a subpurchaser. Accordingly if this is done and the subpurchaser recovers damages from the original buyer, the latter has a prima facie right to recover these damages against the seller who originally sold him the goods. And even though the original buyer has not yet been held liable to his subvendee, the amount of his probable liability may be recovered from the original seller.' 3 Williston on Contracts, p. 2416, § 1355; 2 Williston on Sales, p. 1438, § 599a; Buckbee v. P. Hohenadel, Jr., Co. [7 Cir.], 224 F. 14, L.R.A.1916C, 1001, Ann.Cas.1918B, 88; Lissberger v. Kellogg, 78 N.J.L. 85, 73 A. 67; Hubbard Steel Foundry Co. v. Federal Bridge, etc., Co., 169 Wis. 277, 171 N.W. 949."

▆▆▆ Where the damages have been liquidated in an action by the subvendee, this amount is prima facie the amount the vendee may recover from the original vendor. Aldridge Motors, Inc., v. Alexander, 217 N.C. 750, 9 S.E.2d 469; Reese v. Miles, 99 Tenn. 398, 41 S.W. 1065. Plaintiff is, therefore, entitled to recover the amount of the Landes judgment and costs which it paid, $990.23.

▆▆▆ Plaintiff further seeks to recover the sum of $1,500, representing the counsel fee it paid its attorneys to defend the Landes action after it had requested defendant to come in and defend that case and defendant had declined to do so. Defendant admitted the reasonableness of this fee for the services rendered, but it challenges the right of plaintiff to recover counsel fees as an item of its damages. Where a vendee who has resold goods with a warranty similar to that made by his vendor is subjected to suit by the subvendee for breach of that warranty, he is entitled to be restored to the position he would be in if the vendor had not defaulted. Where he gives notice to the vendor to come in and defend that suit and the vendor fails to do so, the reasonable cost to the vendee of that defense in relief of the ultimate liability of the vendor should be recoverable by him. It is quite true that our jurisprudence does not recognize counsel fees incurred in an action as a recoverable item of damages in that action, and litigants must bear the expense of counsel as an incident of establishing their legal rights. Where, however, as in the case at bar, the defense of an action by a party is undertaken for the protection of the person ultimately liable after he has had notice to undertake the defense but fails to do so, the reasonable costs of that defense should fall on him. Allowance of counsel fee as a proper item of damage in this situation has been recognized by the authorities. In Carleton v. Lombard, Ayres & Co., 19 App. Div. 297, 46 N.Y.S. 120, an action was brought by a vendee against his vendor for damages arising from a sale of oil containing latent defects to a subvendee, with a warranty similar to that made by the vendor. Said the court at page 125 of 46 N.Y.S.: "The only other question is as to the measure of damages. It is well settled that the plaintiffs were entitled to recover an amount sufficient to compensate them for what they had lost in consequence of a breach of their contract by the defendant. That would be an amount that would put the plaintiffs in the same position that they would have been in had the contract been complied with. Now, if this contract had been complied with, this Graham suit would never have been brought, and the plaintiffs would not have been compelled to pay that judgment, and would not have been compelled to defend that lawsuit. What the plaintiffs were entitled to recover, therefore, was the amount of the judgment they had to pay, and their legal expenses in defending that lawsuit; this last becoming an item of damage because of the fact that the defendant had notice of the lawsuit, and did take part in its defense." This decision was affirmed without opinion 162 N.Y. 628, 57 N.E. 1106.

To the same effect, see Marlatt v. Clary & Latimer, 20 Ark. 251; Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 230 App.Div. 206, 243 N.Y.S. 352.

Defendant raises a further objection, however, to the allowance of counsel fee as an item of damage in this case because part of the fee was paid to defend items of Landes' claim for which he failed to recover against plaintiff and plaintiff has made no effort to apportion the fee paid

its counsel for defending the entire action.

Landes' total claim was for $3,806.76 and the jury awarded him $810. Defendant contends that if the Lehigh County jury had awarded Landes nothing, the plaintiff could not recover its counsel fee for the defense of that action, because there would have been no breach of warranty on the part of either of the parties to this suit. The defendant, therefore, contends: That the services rendered by counsel in defending the claim in excess of the amount recovered for breach of warranty were furnished in the interest of plaintiff; that because of this, the fee should be apportioned between the parties to this suit, but since there is nothing before the court to enable it to determine such an apportionment, the plaintiff cannot recover anything for counsel fees.

While it is true that if Landes had failed to recover anything the defendant would not be liable to the plaintiff for counsel fees, it is likewise true that if Landes had recovered the full amount of his claim, the defendant, under the authorities, would be liable for the full amount of counsel fees. Viewed in this light, it would seem to be most unjust to penalize the plaintiff and compel him to pay a large portion of the counsel fee in the Lehigh County case simply because its counsel was successful in reducing by an appreciable sum the amount for which the defendant would ultimately be liable. The real basis of Landes' action was breach of warranty and that was the reason Reichard was compelled to employ counsel to defend the action. The defendant has agreed that $1,500 is a reasonable sum for counsel fees, and I hold that the plaintiff is entitled to recover this sum from the defendant.

The balance of the damages claimed by the plaintiff is the amount of its expenses for preparation of the defense to the Landes action. The claim is for $789.42 for expenses incurred by a man in making two trips to State College and one trip to New York and Canada to obtain witnesses and also in payment of two professors of Pennsylvania State College for professional advice given to the plaintiff in preparation of the trial.

Defendant's objection to these items on the ground that there is nothing in the record that the charges made were fair and reasonable and that the services rendered were necessary is well taken. There seems to be no doubt that they were incurred and that to some extent they were necessary, but plaintiff failed to show that they were the fair and reasonable charges for the services rendered and therefore cannot recover for those items.

Judgment is hereby entered for plaintiff and against the defendant in the sum of $2,490.23.