HUBBARD STEEL FOUNDRY COMPANY, Appellant, vs. FEDERAL BRIDGE & STRUCTURAL COMPANY, Respondent.

*April 5—April 29, 1919.*

*Sales: Rescission for breach: Justification: Damages of buyer: Contemplation of parties: Stipulations: Admitting amounts of counterclaim: Effect.*

1. Where a manufacturer and seller of steel castings was in default for nondelivery of a large quantity, and the buyer was warranted in believing that the seller was unable to make timely delivery of such castings as the contract called for, the buyer was justified in standing on a breach by the seller in furnishing castings which were seventy per cent. unfit, in declaring the contract ended, and in demanding return of its patterns to enable it to contract with others.

2. In an action by the seller for the price, the buyer counterclaiming for various damages on account of defective goods, an oral stipulation between counsel that the amounts of the items of the counterclaim specified in the buyer's exhibit were correct, but which admitted nothing as to the validity of the charges, rendered proper an allowance against the seller of all the items of the exhibit, if the seller's liability on the counterclaim was shown.

3. Where the buyer of steel castings indicated to the seller special circumstances concerning the buyer's contract to furnish castings to another party and the buyer's obligation to deliver thereunder, the seller, which broke the contract by delivering too high a percentage of defective castings, was liable to the buyer for the admitted amount of damages incurred by it through payment to the party to which it had agreed to furnish the castings itself.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge.    *Affirmed.*

This action was brought by the plaintiff to recover the sum of $3,239.97 on account of steel castings alleged to have been made, sold, and delivered to the defendant under a contract.    The defendant counterclaimed for $8,150 damages on account of alleged defective castings and delay in delivery.

On March 24, 1915, the plaintiff and defendant entered into a contract whereby the plaintiff agreed to furnish steel castings to the defendant for a certain railroad bridge known as the V., S. & P. bridge at Shreveport, Louisiana.    This bridge was to be built for the Vicksburg, Shreveport & Pacific Railway Company by the Blodgett Construction Company of Kansas City, and the defendant company was under contract with the Blodgett Company for certain portions of the work.    The castings were to be furnished by the plaintiff to the defendant, which in turn bought them to use in filling its contract with the Blodgett Company.

The plaintiff claims that the castings were made and delivered, and that, allowing the defendant credit on the account in the sum of $2,925.05 because of castings returned and credited at the same rate as purchased, there is now owing to the plaintiff from the defendant the sum of $3,239.97 and interest thereon at the rate of six per cent. per annum from and after the 31st day of August, 1915.

The defendant alleges that the plaintiff failed to deliver the castings within the time specified in the contract; that from time to time the plaintiff sent castings which failed to pass the inspection of R. W. Hunt & Co., as provided by the contract, and that on September 1, 1915, the defendant ordered the plaintiff to return the patterns for the castings and placed the order for them with another company; that due to the inability of the plaintiff to make the castings and the delay in the deliveries the defendant was prevented from

carrying out the terms of its contract with the Blodgett Company, and was obliged to pay the Blodgett Company heavy damages for such delay and to pay an increased cost for the castings to the second company contracted with and to spend large sums for machining the defective castings furnished by the plaintiff.

The case was tried before the court without a jury.

The court found, among other things, that the contract between plaintiff and defendant provided that the castings must pass the inspection of R. W. Hunt & Co. and must be shipped complete forty days after receipt of drawings, all defective castings to be replaced without charge; that prior to the execution of the contract between plaintiff and defendant, defendant had entered into a contract with the Blodgett Construction Company of Kansas City for the fabrication and superstructure of the swing-span bridge, which fact was well known to the plaintiff, by the terms of which contract defendant was to deliver all the steel and machinery necessary for the bridge on or before August 15, 1915; that the detailed drawings were sent to the plaintiff company on May 13, 1915; that plaintiff failed to furnish the castings required within the time specified by the contract; that seventy per cent. of the castings furnished by the plaintiff for inspection were rejected as defective when ten per cent. should have been the maximum rejections; that defendant company was delayed in the construction of the bridge to such an extent that on or about September 1st it removed its patterns from the possession of the plaintiff and entered into a new contract with the Falk Company of Milwaukee for the furnishing of the steel castings still remaining unfinished at that date; that the defendant company was justified in canceling its contract with the plaintiff and placing it elsewhere; that through the fault of the plaintiff defendant was forced to pay the Blodgett Company $2,000 damages; that because of the delay defendant company was deprived of the use of $41,872 for

seven months, which sum represents the amount which should have been paid them by the Blodgett Company on September 15, 1915, but which was not paid until April 15, 1916; that defendant company also suffered from the increased cost of the castings furnished by the Falk Company when defendant canceled the contract with the plaintiff and from the cost of machining defective castings.

In awarding damages the court found that the claim of the plaintiff company against the defendant for castings furnished under the contract hereinbefore set forth and for castings furnished under other contracts prior thereto aggregated the sum of $6,133.86; that defendant is entitled to set off against this as credits by virtue of damages paid, interest, and increased cost of castings and cost of machining defective castings, the sum of $6,684.67; that there is therefore due and owing to the defendant upon its counterclaim the sum of $551.39. Judgment to this effect was entered, from which appeal is taken.

For the appellant there was a brief by *Holt & Coombs* of Waukesha, attorneys, and *Chas. T. Hickox* of Milwaukee, of counsel, and oral argument by *Mr. Albert N. Coombs* and *Mr. Hickox.*

*M. A. Jacobson* of Waukesha, for the respondent.

SIEBECKER, J. The appellant contends that the court erred in finding that the evidence established (1) that the plaintiff's representative, Mr. Johnston, at the time of making the contract with defendant for the bridge material was informed by defendant's representative that defendant was a subcontractor of the Blodgett Company for the construction of the railroad bridge; (2) that the delivery of the material had to be completed on or before August 15, 1915, to enable defendant to fulfil its contract as subcontractor; (3) that the detailed drawings for the materials were in fact furnished within the time agreed upon; and (4) that sev-

enty per cent. of the castings furnished by plaintiff were defective and not in compliance with the contract. An examination of the evidence shows that there is ample evidence in the record to sustain the court's findings on these points. True, there is a sharp conflict in the evidence of Mr. Johnston and Mr. Raschig, the respective representatives of plaintiff and defendant at the time of negotiating the making of the contract for the steel castings and machinery, but it cannot be said that the trial court is clearly wrong in accepting the defendant's evidence on these issues as the correct version of the transaction. It is plain that the castings were so defective that about seventy per cent. had to be and in fact were rejected by R. W. Hunt & Co., who were selected by the parties to inspect them. Manifestly this percentage of unfit castings amounted to a failure by plaintiff to comply with the contract. It is practically undisputed that plaintiff on September 1, 1915, was in default for nondelivery of a large quantity of the castings called for by the contract and that defendant was warranted in believing that plaintiff was unable to make a timely delivery of such castings as the contract called for. Under these circumstances the defendant was fully justified in standing upon the breach, declaring the contract ended, and demanding the return of the patterns to enable it to contract with other parties for the castings plaintiff had failed to deliver. The proof is clear that the items defendant specified in the exhibit served with the complaint is a correct statement of the increased cost and expenses defendant was compelled to pay in machining the defective castings and securing others to fulfil its contracts. We are persuaded that the court's conclusions on all the litigated questions are correct. The allowance to defendant of the $2,000 item which defendant paid as agreed damages to the Blodgett Company in settlement for its breach of contract with that company needs to be considered in the light of the circumstances as disclosed by the record in the case.

It is claimed that the defendant was compelled to pay the Blodgett Company $2,000 as damages caused by default of plaintiff in not delivering the steel and the machinery as required by the contract between the plaintiff and defendant. The trial court found: "Because of defendant's failure to furnish the steel and machinery on or prior to June 15, 1915, the Blodgett Company suffered heavy damages, which damages the defendant company were obliged to pay and did pay to said Blodgett Company in the sum of $2,000." The defendant introduced in evidence a writing dated April 13, 1916, evidencing a payment by it of $2,000 to the Blodgett Construction Company in settlement and release of all damages claimed from defendant by the Blodgett Company for defendant's failure to comply with its contract to furnish machinery and castings for constructing the bridge in question. The testimony of Mr. Jacobson as to this settlement is in effect that he, as defendant's representative, went to New Orleans and Shreveport to adjust the differences between the defendant and the Blodgett Company arising by reason of defendant's inability to deliver this material at the time called for by its contract and on account of which default the Blodgett Company claimed to have been damaged in the sum of $6,000; that the Blodgett Company refused to pay the defendant any part of a large sum due the defendant until such claim for damage had been adjusted and paid; that a settlement thereof was effected by him upon the terms of the written release in the sum of $2,000, which was then deducted from the amount due defendant from the Blodgett Company. When this evidence had been received by the court upon the trial the following proceedings were had:

"Mr. Jacobson: Mr. Coombs and I have agreed, that is as to the items contained in Exhibit A of the pleadings, . . . that the amounts specified in Exhibit A are correct. They admit nothing so far as the validity of the charges are concerned; they merely admit the correctness of the amounts." Mr. Coombs: "There is one exception to that, as to the

amount of the interest." By the Court: "It is admitted that the amount of the several items contained in that exhibit are correct with the exception of the interest?" Mr. Coombs: "Yes, but we don't admit the justness of the charge."

The $2,000 item is one of the items in Exhibit A entered thus: "April 17, 1916, adj. of acct. with our customer acct. damages suffered by him due to delivery caused *entirely* by your inability to deliver acceptable castings, $2,000."

The trial court, acting on this evidence and admission, orally declared then and there that plaintiff caused and was liable in damage for the items specified in Exhibit A because of its failure to deliver the castings as required by its contract and "the amount of $2,000 paid by defendant in the settlement with the Blodgett Company." This record and the immediate action by the court thereon persuasively show that the court and counsel understood that plaintiff denied liability for all damage on the ground that plaintiff had no information concerning defendant's relation to the Blodgett Company for the delivery of this machinery and steel castings, and that if plaintiff is liable that all the items it specified as damage except the interest item in Exhibit A were proper items to be recovered. It follows from the stipulation that if liability of plaintiff on the counterclaim is shown, then all items of Exhibit A except the interest charge were to be allowed as the actual amount of damages defendant sustained and that the $2,000 the defendant paid as damages to the Blodgett Company, sustained by reason of plaintiff's breach of defendant's contract, was to be included. This is the fair and reasonable interpretation of the stipulation in the light of the action of the parties and the court in respect thereto. It is therefore considered that the court properly awarded recovery for this $2,000 on defendant's counterclaim upon the ground that the defendant communicated to plaintiff the special circumstances concerning defendant's contract with the Blodgett Company and defendant's obliga-

tion thereunder to furnish and deliver the machinery and steel castings.

This holding of the trial court is proper within the principles declared in *Saveland v. Green*, 36 Wis. 612; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Gross v. Heckert*, 120 Wis. 314, 97 N. W. 952. Judgment awarded on the counterclaim is correct and must stand.

*By the Court.*—Judgment is affirmed.