[Civ. No. 4511. First Appellate District, Division One.—June 23, 1923.]

## HILMAR STEPHANY, Appellant, v. HUNT BROTHERS COMPANY (a Corporation), Respondent.

[1] CONTRACTS—EXCLUSIVE AGENCY—BREACH—LOSS OF PROFITS—EVIDENCE—RECOVERY ALLOWED.—In the event of the breach by the principal of a contract constituting another the exclusive agent for the sale of the products of the former, where the loss of profits cannot be estimated with sufficient certainty, recovery may be allowed for actual expenditures of money and for loss of time in connection with the contract.

[2] ID. — ACTION FOR DAMAGES — RECOVERY OF EXPENDITURES — EVIDENCE—JUDGMENT—APPEAL.—In this action to recover damages for the breach of a contract constituting plaintiff the exclusive agent of defendant for the sale of the products of the latter, the evidence having shown that plaintiff held a similar contract with another company and that he had divided his efforts in his endeavor to sell the products of both companies, the conclusion of the trial court that defendant could only be charged one-half of plaintiff's approximated expenditures was determinative and conclusive on appeal.

[3] ID.—LOSS OF TIME AND PROFITS—EVIDENCE—JUDGMENT.—In such action, the evidence having afforded no definite basis upon which a judgment for services and prospective profits could be predicated that would not be conjectural and speculative, the trial court properly denied the relief sought under those items.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jay Monroe Latimer and J. E. Pemberton for Appellant.

Chickering & Gregory for Respondent.

TYLER, P. J.—This action was brought to recover damages for the breach of a contract. Recovery was had by plaintiff in the sum of $1,675.15, but deeming this sum to be inadequate, he moved for a new trial. The motion was

automatically denied, and this is an appeal by him from
the judgment and order.

The record shows that the contract sued upon was en-
tered into by the parties on September 15, 1915.  By its
terms plaintiff was constituted the exclusive sales agent
for defendant's products, consisting of numerous varieties
of canned fruits, in the countries of Sweden, Norway, Den-
mark, Germany, Austria-Hungary and Switzerland.  The
contract was to exist for a period of five years from its
date.  Plaintiff's sole compensation for his services was to
be computed upon a commission basis, it being agreed that
he was to receive six per cent on the amount of consum-
mated sales, out of which he was to pay his expenses and
any subagents he might employ.  To properly carry out his
part of the contract plaintiff concluded to visit the coun-
tries mentioned therein.  Accordingly, at his own expense he
made a trip to Europe, which consumed some five months
or more, upon which occasion he appointed subagents to
solicit business, and did in fact procure certain orders.
The bulk of these orders, however, went only as far as
New York, owing to the refusal of the War Trade Bureau
in Washington to issue permits for shipment abroad, and
they are not here involved.  Confronted with this situation,
plaintiff returned to this state, it being impossible for him
to do business of any kind in either neutral or belligerent
countries.  Shortly prior to the time that the contract in
question was entered into plaintiff had procured a similar
agreement with the Haiku Fruit and Packing Company to
handle its goods in the same territory and for the same
period covered by his contract with defendant.  The
product of the Haiku Fruit Company consisted of canned
pineapple, a commodity defendant company did not handle.
In the latter part of the year 1918, and upon the signing
of the armistice, the embargo with European countries was
lifted and plaintiff thereupon offered to complete perform-
ance of his contract with defendant company.  He was
notified that it had abrogated the same and that so far as
it was concerned the matter was at an end.  Plaintiff there-
upon brought this action for damages sustained by him
in consequence of the breach of the contract on the part of
defendant.

By the prayer of the complaint plaintiff seeks to recover the expenses incurred by him in the sum of $3,342.25; he also asks for $10,000 as compensation for loss of time, labor, and skill employed by him in making his trip to Europe, and for the further sum of $100,000 by reason of the wrongful abrogation of the contract.

The trial court found in effect that, while plaintiff had observed and performed all the provisions of the contract required of him to be performed, and had in so doing expended time and money upon the faith that defendant would carry out its obligations, the company failed to do so, but, on the contrary, breached its agreement. It further found that the trip to Europe taken by plaintiff was a necessary act to properly carry out the agreement, and that the expense incident thereto amounted to the sum of $1,676.16. Upon the items of claimed damages for loss of time and prospective profits, however, it was found that the evidence was insufficient to form any basis for compensation upon the subjects, as it failed to establish any method by which such damage might be ascertained with any reasonable probability or certainty, and relief was accordingly denied upon these items.

Plaintiff appeals from the judgment and from the denial of his motion for a new trial, claiming that under the evidence he has been inadequately compensated for his loss growing out of the breach of the contract by defendant.

Under the terms of the contract, as above pointed out, plaintiff was not entitled to compensation for expenditures incurred by him in the performance of his obligations as payment for his services was provided for upon a strictly commission basis, and the amount thereof was to cover any and all outlay on his part. **[1]** It is conceded, however, that in the event of a breach of contract, where loss of profits cannot be estimated with sufficient certainty, recovery may be allowed for actual expenditures of money and for loss of time in connection with the contract.

**[2]** Plaintiff contended at the trial that he actually expended in connection therewith the sum of $3,342.25. It appears from the record that this sum was a mere approximation on his part of his expenditures. He insists, however, that he should have been allowed the full amount so approximated by him. It developed on his cross-exami-

nation that he had a similar contract with the Haiku Company for the sale of that company's product, and that upon the occasion of his European trip he divided his efforts in his endeavor to sell the products of both companies. In rendering judgment upon this element of damage the judge of the court below no doubt concluded that defendant company could only be charged one-half of the approximated expenditures, for the sum allowed is practically one-half of that amount, it being some five dollars in excess thereof. Respondent makes no objection to the excess, and appellant is in no position to do so as he is not injured thereby. The finding of the court upon this subject being one of fact, and there being evidence to support it, is determinative and conclusive here.

[3] Upon the element of damages concerning the value of plaintiff's services for his loss of time, there is no evidence in the record upon which a judgment for damages could be predicated. Defendant himself, when asked to put a value on them, stated that on account of their peculiar nature he was unable to do so. It appears in evidence that he had for a number of years represented other companies dealing in similar products, and that he maintained a store in Berlin, where he kept such goods on hand, and that he was known as a dealer in California products. While this experience may have added to his value as a sales agent, it in no manner afforded the court an opportunity of determining with reasonable or any degree of certainty the damages suffered by plaintiff in this connection. Without some evidence upon the subject a determination thereon would have been purely conjectural and speculative. If defendant himself could not place a value upon his services the trial court was in no position to do so, in the absence of any other evidence showing their value, and there was none. We are of the opinion, therefore, that as to this element of damage the ruling of the trial court was also correct.

The remaining element of damages, referring to the loss of prospective profits by reason of the breach, presents appellant's main contention.

Upon this subject plaintiff offered in evidence proof of the fact that he had procured between September, 1915, and February, 1916, orders for 2491 cases of defendant's

goods in Norway and Sweden alone, but delivery was not had on account of war conditions. He also produced a witness who was an importer and exporter of products similar to those dealt in by defendant company, who testified that in the Scandinavian countries the opportunity for the sale of such goods was practically unlimited. He further testified that he had made sales therein during a period of time covered by plaintiff's contract to the amount of between $75,000 and $100,000, and that the average value per case was eight dollars, which would mean on a $75,000 basis over 9000 cases. He also testified that he could have sold from 100,000 to 200,000 more cases if his firm could have procured the goods. Statistics of the United States relating to exports of canned products to the countries covered by the contract were introduced for the purpose of showing the volume of business which existed between the United States and the countries covered by the contract, and how the demand for the same had increased since plaintiff had procured the orders in 1915. By a system of multiplication based thereon plaintiff endeavored to show the probable volume of business he would have secured but for defendant's breach.

With this evidence as a basis we are asked if plaintiff's witness could have sold from 100,000 to 200,000 cases if he had the goods, what amount could plaintiff with his long experience and wide acquaintance in the trade have sold? We are constrained to answer that we do not know. The conservatism pervading the law is against allowing damages purely speculative, fanciful or imaginary. In order to entitle one to recover prospective profits he must show that the profits claimed were reasonably certain to have been realized but for the wrongful act complained of. It is not an insuperable objection to their recovery that they cannot be directly and absolutely proved with mathematical certainty. In the nature of things where performance has been prevented the proof of profits cannot be absolute, and one who breaches his contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages. (*Shoemaker* v. *Acker,* 116 Cal. 244 [48 Pac. 62]; *Cederberg* v. *Robinson,* 100 Cal. 98 [34 Pac. 625].) That plaintiff ought to recover there is no question, as the evi-

dence fully supports the finding that defendant deliberately breached its contract. In order to do so, however, it was incumbent on him to prove his case.

In *Parke* v. *Frank,* 75 Cal. 364 [17 Pac. 427], the court in dealing with this subject, said: "It seems not infrequently to be lost sight of in the trial courts that, in actions upon contracts, the amount of damages caused by an alleged breach is to be proved as a fact." It is there pointed out that actions based upon contract differ from those of tort, where the amount of recovery is left upon general principles to the "sound discretion" or "dispassionate judgment" of the jury.

There can be no recovery of prospective profits unless there is a reasonably certain basis for their ascertainment. Here the trial court found there was none, and we think rightfully so, for the evidence presented affords no means by which the court could by any degree of reasonable probability determine what amount would be a fair approximation of the amount of profit plaintiff might have earned but for the breach.

Counsel for appellant have cited us to several cases in this and other jurisdictions in support of his contention that the evidence offered presents a basis for the computation of his claimed damages. We do not deem a discussion of those cases necessary, as in all of them there was some definite basis upon which damages could be predicated. The last expression of opinion on the subject in this state is found in *Friedman* v. *McKay Leather Co.,* 179 Cal. 566 [178 Pac. 139], where it is held that speculative damages are not recoverable, and that where the compensation of the agent is a commission, based on sales made by him, damages on the basis of suppositive sales are not recoverable. The evidence affording no definite basis upon which a judgment could be predicated that would not be conjectural and speculative, the trial court properly denied the relief sought under the items of damages based upon services and prospective profits (2 Corpus Juris, p. 791, sec. 455; 1 Sedgwick on Damages, 9th ed., sec. 172).

For the reasons given the judgment is affirmed.

Richards, J., and St. Sure, J., concurred.