[L. A. No. 19108. In Bank. June 29, 1945.]

GEORGE G. GRUPE, JR., Respondent, v. FRED P. GLICK et al., Appellants.

682

Ben Gould for Appellants.

Turner & Wald and Preston Turner for Respondent.

EDMONDS, J.—A judgment for damages followed findings that oil refining equipment sold by Fred P. Glick, doing business as Fabriform Steel Products Company, did not operate as represented by him. Upon the appeal from that judgment, the principal questions presented for determination concern the measure of damages to be applied and the sufficiency of the evidence to support the findings as to certain amounts of damage sustained by the purchaser.

It appears that three machines which the appellants sold to George G. Grupe, Jr., upon representations that they would re-refine oil, were not properly designed or constructed. Grupe paid $500 for each of them under a contract which gave him the exclusive selling rights for the device, and upon the express warranty that they were suitable for the purpose of re-refining oil. Grupe sold each machine for $1,500 and he was negotiating for the sale of five more at a price of $1,800, respectively, when it was ascertained that the equipment was unsuitable for the warranted purpose. The trial court found that the equipment bought by Grupe had a total value of $75 at the time of its delivery but, if as represented, its value would have been $4,500, and awarded general damages in the amount of $4,425. In addition, the court found that Grupe is entitled to special damages for loss sustained as a result of the breach of warranty in the amounts of $321.34 expended by him, $526.50 expended by one and $600 by another of his vendees, and $1,000 as prospective profits on future sales. Judgment was rendered for the sum of $6,872.84. The appeal of Glick individually and as doing business under the fictitious name is not only from the judgment but also from an order denying a motion to introduce evidence in the form of a demonstration of equipment of the kind sold by him.

The findings to the effect that the machines were not properly designed and constructed rest upon conflicting evidence and, the appellants concede, are not now subject to objection insofar as the basis for them is concerned. But it is argued that the judgment should be reversed because the trial court refused to receive additional evidence. The same offer of proof was made at the time a motion for a new trial was heard and denied.

The appellants also vigorously attack the several amounts for which the judgment was rendered and first challenge the sum of $4,425 given to the buyer as general damages. They urge that as the buyer's resale price included the cost of procuring customers for his vendees, the value of that service should have been deducted from the amount of damages. Regarding the award made for the expenditures of purchasers from Grupe in attempting to make the machines conform to the warranty, although the amounts are not questioned, it is claimed that they are not recoverable in this action because it does not appear either that the respondent has paid them or that his vendees have sued him for breach of warranty. As to the loss of anticipated profits on sales for which $1,000 was allowed, it is contended that this is not a proper item of damage in an action brought by the owner of a business which has not been established long enough to have a record of profitable operation. In any event, the appellants say, the evidence does not show that the damages awarded were within the contemplation of the parties at the time they contracted. In support of the judgment in his favor, the respondent urges that the authorities cited by the appellants are not in point or, upon the facts shown in this case, are distinguishable. Moreover, he asserts, the findings of the trial court are supported by substantial evidence, and all conflicts must be resolved in his favor.

Considering the appellants' complaint regarding the court's refusal to receive experimental evidence, the record shows that at the conclusion of the presentation of testimony, Glick asked leave to operate one of the three machines which he had sold and to offer demonstrative proof as to its operation under such conditions as might be imposed. This motion was granted. The following day the conditions for operation were agreed upon. It was determined that 1,000 gallons of oil were to be run through the equipment and that the test was to be completed within one week. Thereupon the court, for the an-

nounced purpose of allowing sufficient time to make the demonstration, continued the trial for 12 days, with the understanding that if counsel were not present on that day, it would go over for one week, and if necessary for an additional week thereafter.

Pursuant to this understanding, counsel took the full time allowed, a total of 26 days from the date when leave was granted to make the demonstration. But this time was given with the express requirement that the test must be completed by March 30th, the date which had been fixed by the court for final arguments. On March 30th, counsel for Glick advised the court that the demonstration had not been made and, for their accommodation, the matter was again continued to April 9th, with the direction that the parties then must be prepared to argue the case. Two days were set aside for that purpose.

When the case was called on April 9th, Glick's counsel stated that the promised demonstration had not been made, and he requested permission to make a continuous run of the machine for 30 hours. If the device performed at a capacity of 20 gallons per hour, according to the representation upon which Grupe purchased it, that time would allow the processing of 600 gallons of oil instead of 1,000 gallons, which was the amount contemplated by the operation originally proposed. In making the request, counsel for Glick agreed with the trial judge that he had been very lenient in allowing time within which to make the proposed test. The motion was opposed by counsel for Grupe, who pointed out that considerable time had been consumed by the prior continuance and there was no explanation for the failure to make the promised demonstration within the 26 days which had been provided for that purpose. The motion was denied.

It is argued that the objection to the proposed 30-hour demonstration was arbitrary, that it does not appear that the respondent would have been harmed by the delay, and that, as the motion was based upon an offer to show that the machine could re-refine oil at the rate of 20 gallons per hour, the appellants were prejudiced by the court's ruling. The appellants also complain that prejudicial error resulted from the failure of the trial court, at the hearing of the motion for a new trial, to receive into evidence the results of a trial run of the machine or to permit a demonstration originally proposed.

In its ruling at the time the motion for new trial was heard, the court pointed out that during the trial ample time had been given within which to make the demonstration but that Glick had not taken advantage of the opportunity afforded him, nor had he made any adequate explanation of his failure to do so. Moreover, the trial judge observed that the affidavits presented in support of the motion for a new trial did not show that Glick had any evidence which, with due diligence, could not have been produced at the trial.

The granting or withholding of permission to make a test operation, the results of which are to be presented as evidence of the existence or nonexistence of a material fact in controversy, is a determination largely within the discretion of the trial court and its ruling will not be disturbed except upon a clear showing of an abuse thereof (*Miller* v. *Dollar Steamship Lines, Inc.,* 19 Cal.App.2d 206 [64 P.2d 1163] ; *Collins* v. *Graves,* 17 Cal.App.2d 288 [61 P.2d 1198]).

In the present case, there is no basis whatever for attacking the rulings of the court upon any motion made in regard to the offer of proof. Certainly the respondent does not have the burden of showing, as claimed by the appellants, that he would have been harmed had additional time been allowed to hold the proposed 30-hour demonstration. And the affidavits in support of the motion for a new trial, by which the appellants first attempted to explain the failure to hold a demonstration within the time allowed by the court and in the manner agreed upon, do not show sufficient facts, even had they been offered at the trial, to justify the holding that under all of the circumstances the court abused its discretion in refusing to permit a demonstration.

W. H. Walker, an employee of the appellants, in stating the reasons why the test had not been made before, said that he did not commence to make the repairs necessary to put the machine in order for the demonstration until March 30th and that not until the week of March 23rd to March 28th did he and other employees do anything toward setting up the equipment to be used for the trial run. No excuse was given for such delay. And although, according to other statements made by Mr. Walker in his affidavit, on April 9th the machine was satisfactorily operated for 3½ hours, and on April 10th for another 3½ hours, in view of the evidence showing that failures in operation developed after the machine had operated for a considerably longer period, his statements are

neither relevant nor convincing. More particularly, the test described by him was not made under conditions similar to those existing when the machines were being used by the respondent's vendees.

Moreover, it does not appear that the appellants have been prejudiced by the fact that the trial court did not have the benefit of the demonstration in reaching his decision. The cause was tried without a jury, and there was abundant evidence to show that, in the hands of Grupe and his vendees, the three machines failed to operate as warranted. The fact that Glick or his employees assertedly could operate one of the machines for a relatively short time with apparent success very probably was properly considered by the trial judge as having but little evidentiary value in determining the issue concerning the general usefulness of the device.

Considering the other points relied upon by the appellants, section 1789, subsection 7, of the Civil Code provides that, "in the case of breach of warranty of quality," the general measure of damages "is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." The subsection also provides that the presence of "special circumstances showing proximate damage in a greater amount" may justify the allowance of additional damages.

In its findings, the trial court declared that if the machines had been fit and suitable for the purpose of re-refining oil, they "would have been worth" $4,500 to Grupe, but that at the time they were delivered to him they were totally worthless except for a junk value of $75, and Grupe "thereby suffered damages in the sum of $4,425." The court also found that as a direct and proximate result of the failure of the machines to comply with the representations and warranties made by the seller, Grupe had lost $3,000 in profits which he would otherwise have realized under specified resale contracts; that he thereby suffered damages in the amount of $1,500 paid for the machines, and damages to the extent of $3,000 for loss of profits on the resale of them, a total of $4,500, less $75, found to be the value of the machines as junk.

These findings declare that Grupe is entitled to damages in the amount of $4,425 upon two different theories. First, it is said, the sum represents the difference between $4,500, the amount the machines "would have been worth to plaintiff" if they had performed as warranted, and $75, their value

at the time they were delivered to Grupe. The court also reasoned that $4,425 is recoverable as the difference between $1,500, the amount paid by Grupe, and $75, plus the profit of $3,000 which Grupe lost on the resales which failed as a consequence of the breach of warranty.

Under the latter theory the profits which Grupe would have made on the resales of the machines are allowed as a separate item, whereas the first measure of damages includes such profits by computing the award upon Grupe's sales at $1,500 per machine. In this connection, it may be noted, the trial court departed from the code provision specifying as the basis for awarding damages "the value . . . [the goods] would have had if they had answered to the warranty" (Civ. Code, § 1789(7)), and specified in its findings the amount the machines would have been "worth to plaintiff." Although "value" and "worth to plaintiff" may, under certain circumstances, be approximately the same, they are not necessarily synonymous. (*Hurd* v. *Barnhart,* 53 Cal. 97, 99; *Shurtleff* v. *Marcus Land & Investment Co.,* 59 Cal.App. 520 [211 P. 244].)

The alternative findings of the trial court, one of which directly and the other indirectly fixes the loss of profits sustained by Grupe, indicate the uncertainty in the law as to the basis upon which a buyer may recover for breach of warranty upon goods purchased for resale and resold. Notwithstanding that, in actions for damages consequent upon the breach of a warranty of quality, damages have been awarded upon the theory that the buyer may recover, in addition to general damages, the profits lost on resales made prior to knowledge of the breach (*Hubshman* v. *Louis Keer Shoe Co.,* 129 F.2d 137; *Parker* v. *S. G. Shaghalian & Co.,* 244 Mass. 19 [138 N.E. 236]; *Lissberger* v. *Kellogg,* 78 N.J.L. 85 [73 A. 67]; *Reese* v. *Miles,* 99 Tenn. 398 [41 S.W. 1065]), the majority of courts make no such segregation but indirectly allow the recovery of damages for the loss of profits upon the theory that the resale price obtained by the buyer from his vendee represents the value the goods would have had if as warranted (*McKinney* v. *Baker,* 212 Ala. 490 [103 So. 467]; *Geo. W. Robinson & Co.* v. *Hyer Bros.,* 35 Fla. 544 [17 So. 745]; *Loxtercamp* v. *Lininger Implement Co.,* 147 Iowa 29 [125 N.W. 830, 33 L.R.A.N.S. 501]; *Lewis* v. *Rountree,* 79 N.C. 122 [28 Am.Rep. 309]; *Smith, de Maceda & Co.* v. *Swift & Co.,* 267 Pa. 365 [110 A. 141]; *Newbern* v. *Joseph Baker & Co.,* 147 Va. 996 [133 S.E. 500]; see: *Germain Fruit Co.* v. *J. K. Armsby Co.,* 153 Cal.

585 [96 P. 319]; *Johnston* v. *Faxon,* 172 Mass. 466 [52 N.E. 539]; *Trigg* v. *Clay,* 88 Va. 330 [13 S.E. 434, 29 Am.St.Rep. 723]; anno. 64 A.L.R. 883) or, at least, is evidence of the value of the goods purchased for resale and resold (*Milton* v. *Rowland,* 11 Ala. 732; see: *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473 [35 A. 521]; *Johnson* v. *Faxon, supra*), unless the resale price includes an unreasonable profit not contemplated by the parties when they contracted (*Martin* v. *Neer,* 126 Ore. 345 [269 P. 342]; see: *Guetzkow Bros. Co.* v. *A. H. Andrews & Co.,* 92 Wis. 214 [66 N.W. 119, 53 Am.St.Rep. 909, 52 L.R.A. 209]). However, whether the loss of profits is allowed as a separate item of damages, or indirectly as a part of the general damages, the recovery of them has generally been limited to cases where the goods are unobtainable on the market (*National etc. Mfg. Co.* v. *Producers' Refining Co.,* 169 Cal. 740 [147 P. 963]; *McKay* v. *Riley,* 65 Cal. 623 [4 P. 667]; *Coates* v. *Lake View Oil & Refining Co.,* 20 Cal.App.2d 113 [66 P.2d 463]; *Long Beach Fisheries Co.* v. *Curtis Corp.,* 58 Cal.App. 318 [208 P. 372]; note, 52 L.R.A. 209; note, 53 L.R.A. 33; anno. 88 A.L.R. 1439; 46 Am.Jur. Sales, p. 817, § 689) and, consequently, the buyer cannot offer his vendee a reasonable substitute to fulfill his resale contract.

Although the findings of the trial court fail to state that oil re-refining machines of the kind and quality manufactured by the seller in this case were not on the market at or about the time the Glick machines were found to be unusable, there is evidence to that effect. But assuming the availability of a reasonable substitute in the market, it does not follow that damages for the loss of resale profits are not recoverable where, as in the present case, the buyer has delivered a mechanical device to his vendee according to the terms of the resale contract without knowledge that it was unsuitable for the purpose for which it was warranted. The amount lost by Grupe on account of these prospective profits was therefore properly included in the sum allowed as general damages for breach of warranty if the evidence shows that such damages are (1) such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, and (2) reasonably certain.

There can be no question but that, according to the record in the present case, the parties at the time they contracted contemplated that if the machines did not perform according to warranty, resale profits would be lost by the buyer. Although there is other evidence concerning the dealings of the parties

which warrants this conclusion, the fact that Grupe was made an exclusive agent for the sale of the equipment is sufficient to bring the case within the rule that the loss of profits on goods resold, to be recoverable, must be reasonably foreseeable by the seller at the time the parties contracted for the original sale.

Notwithstanding that in some jurisdictions it is required that the resale contract be in existence at the time of the original sale, for the reason that otherwise the resale would not be a transaction within the contemplation of the parties, the weight of authority is to the effect that the time of making the resale contract is immaterial where, at the time of the sale, the seller knows that the buyer, as a dealer, is purchasing for resale in the ordinary course of his business. (88 A.L.R. 1471.) The latter rule is based upon sound reason, for it is unrealistic to say that the seller, knowing the purpose for which the buyer is purchasing, cannot foresee the damages that will follow from a breach of warranty not ascertainable until the goods are put to use by the buyer's vendee. Also, under the measure of damages applicable in the present case, it cannot be claimed that the amount awarded lacks a basis of certainty; on the contrary, the general damages may be measured with a mathematical exactness not ordinarily required.

In arriving at its conclusions, however, the trial court failed to take into account certain evidence which demonstrates that the resale price obtained by Grupe included a charge for services agreed to be rendered by him in securing business for the subpurchaser of each machine. The record shows that Grupe estimated the cost of this service as being somewhere between $300 and $500 per machine, and the findings should have included the amount determined to be reasonable for that purpose and made a deduction accordingly.

In regard to the items of $321.34, $526.50, and $600 awarded as special damages, it is generally held that, in an action against the seller for a breach of warranty of quality, the purchaser may recover damages for money and time spent in reasonable efforts to make the machine conform to the warranty under which it was sold (*Fox* v. *Stockton Com. Harvester etc. Works,* 83 Cal. 333 [23 P. 295]; *McLennan* v. *Ohmen,* 75 Cal. 558 [17 P. 687]; *W. T. Adams Machine Co.* v. *Castleberry,* 92 Ark. 310 [122 S.W. 998]; *Bass Foundry & Machine Co.* v. *Sulzberger & Sons Co.,* 205 Ill.App. 454; *Isaacs* v. *Jack-*

*son Motor Co.,* 108 Kan. 17 [193 P. 1081]; *Plumbers Supply Co.* v. *Lanter,* 280 Ky. 523 [133 S.W.2d 739]; *Whitehead & Atherton Machine Co.* v. *Ryder,* 139 Mass. 366 [31 N.E. 736]; *Peoples St. Bk. of Butterfield* v. *Randby,* 158 Minn. 309 [197 N.W. 265]; *Waynesville Wood Mfg. Co.* v. *Berlin Machine Wks.,* 144 N.C. 689 [57 S.E. 455]; *Dahl Implement & Lumber Co.* v. *Campbell,* 45 N.D. 239 [178 N.W. 197]) and, in addition, where the purchaser resells the machine with a warranty similar to that made by his seller, without knowledge that the machine is unsuitable for the purpose for which it was designed, he may recover the amount for which he is liable to his subpurchaser because of the latter's expenditure of time and money in reasonable efforts to make the machine conform to the warranty (*Lissberger* v. *Kellogg, supra; Carleton* v. *Lombard, Ayres & Co.,* 19 App.Div. 297 [46 N.Y.S. 120], affirmed without opinion, 162 N.Y. 628 [57 N.E. 1106]; *Passinger* v. *Thorburn,* 34 N.Y. 634 [90 Am.Dec. 753]; *Aldridge Motors Inc.* v. *Alexander,* 217 N.C. 750 [9 S.E.2d 469]; *Reese* v. *Miles, supra; Hubbard S.F. Co.* v. *Federal B. & S. Co.,* 169 Wis. 277 [171 N.W. 949]), notwithstanding that the purchaser has not settled with the subpurchaser or suffered judgment (*Buckbee* v. *P. Hohenadel, Jr., Co.,* 224 F. 14 [139 C.C.A. 478, L.R.A. 1916C 1001]; *Davis* v. *Ferguson* (Tex. Civ. App.), 255 S.W. 655; *Wolstenholme, Inc.* v. *Jos. Randall & Bros., Inc.,* 295 Pa. 131 [144 A. 909]).

As it may be assumed that a buyer will spend time and money in reasonable efforts to make defective goods conform to their warranty, the amounts incurred or paid for that purpose should be considered as being within the contemplation of the parties at the time of the original contract of sale and, because such damages proximately result from the breach of warranty and can be ascertained with reasonable certainty, they are allowable. With respect to the expenditures of the subpurchaser in reasonable efforts to cure the breach of warranty, there can be no valid objection to their inclusion in the award upon the ground of lack of proximity or certainty and as Glick knew that Grupe was purchasing the oil re-refining machines for resale, such damages reasonably may be considered as a foreseeable consequence of the breach of warranty. Accordingly, the trial court properly allowed Grupe $321.34 which it was shown he expended in good faith in his efforts to enable his vendees to use the machines. Also, the amounts of $526.50 and $600, paid by subpurchasers Fred McTyr and

Ben C. Shepherd, respectively, in connection with their efforts to operate and successfully use the oil re-refining machines were correctly charged to Glick in the findings and judgment.

As an additional item of damages, $1,000 was awarded to Grupe for the loss of profits which he asserts he would have made upon prospective sales. From the filing of his complaint to and including his position for a hearing by this court, he proceeded upon the theory that damages for profits anticipated from future contemplated sales may be recovered in an action for breach of warranty. In the answer to the petition for a hearing, the appellants for the first time suggest, without citation of authority, that the loss of prospective profits upon future sales may not be recovered under a cause of action for breach of warranty. Damages for the loss of profits of that kind are generally recoverable in an action for breach of contract; also, apparently without question, they have been awarded as relief properly obtainable upon other causes of action, the basis of the determination being that such detriment is the proximate consequence of the breach of warranty. But it is here unnecessary to determine whether a complaint charging the breach of warranty will justify an award of such damages, because this case was tried upon the theory that under the issues framed by the pleadings they are recoverable by Grupe if the evidence tends to prove detriment in that category. (*Stewart* v. *Crowley,* 213 Cal. 694 [3 P.2d 562]; *Silvers* v. *Grossman,* 183 Cal. 696 [192 P. 534]; *Cross* v. *Bouck,* 175 Cal. 253 [165 P. 702]; *Swanson* v. *Hempstead,* 64 Cal. App.2d 681 [149 P.2d 404]; *Weiner* v. *Luscombe,* 19 Cal. App.2d 668 [66 P.2d 151]; *McDaniel* v. *McDaniel,* 134 Cal. App. 597 [25 P.2d 843].)

An award of damages for the detriment occasioned by the loss of future profits is subject to the general rule that the amount which, except for the defendant's wrongful act, would have come to the plaintiff, must be certain and must have been within the contemplation of the parties when they contracted. In this connection, the appellants contend that, because Grupe had an unestablished business, it is impossible to calculate with reasonable certainty the damages assertedly suffered by him and, therefore, any allowance to him would rest upon a speculative, contingent and conjectural basis. But, unquestionably, the loss of profits upon future sales was contemplated as a probable consequence of a breach of the contract made by the parties to this action. By its terms, in

addition to naming Grupe exclusive agent for the sale of the machines, the contract provided that he was to purchase at least one machine per month for a period of six months and, thereafter, two machines per month, the contract to terminate at the seller's option should the buyer fail to comply with these minimum requirements.

However, to justify the award of $1,000 allowed Grupe as compensation for profits he would have made upon additional sales, it must meet the further test of certainty. A cause of action for the loss of prospective profits on future sales that probably would have been made but for the breach of warranty is different from and does not include a claim for damages for injury to the buyer's business or good will resulting from the resale of inferior goods; nor is it an action for breach of an exclusive sales agency contract. The plaintiff's claim is limited to compensation for the gains prevented by his inability to make additional sales in the ordinary course of business.

Upon this question, it is held that where the operation of an established business is prevented or interrupted, as by a tort or breach of contract or warranty, damages for the loss of prospective profits that otherwise might have been made from its operation are generally recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the past volume of business and other provable data relevant to the probable future sales. (*Overstreet* v. *Merritt,* 186 Cal. 494 [200 P. 11] (breach of contract) ; *Schumann* v. *Karrer,* 184 Cal. 50 [192 P. 849] (lease) ; *Barnes* v. *Berendes,* 139 Cal. 32 [69 P. 491, 72 P. 406] (tort) ; *Hawthorne* v. *Siegel,* 88 Cal. 159 [25 P. 1114, 22 Am.St.Rep. 291] (lease) ; *Lambert* v. *Haskell,* 80 Cal. 611 [22 P. 327] (tort) ; *Hacker Pipe & Supply Co.* v. *Chapman Valve Mfg. Co.,* 17 Cal.App.2d 265 [61 P.2d 944] (breach of contract) ; *Northwest Auto Co.* v. *Harmon,* 250 F. 832 [163 C.C.A. 146, Ann.Cas. 1918E 461] (breach of contract) ; *Neal* v. *Jefferson,* 212 Mass. 517 [99 N.E. 334, Ann.Cas. 1913D 205, 41 L.R.A.N.S. 387] (lease) ; *Randall* v. *Peerless Motor Car Co.,* 212 Mass. 352, 380 [99 N.E. 221] (breach of contract) ; *Hubshman* v. *Louis Keer Shoe Co., supra* (breach of warranty) ; Ann.Cas. 1917B 1194; 6 Ann.Cas. 973; see: *Germain Fruit Co.* v. *J. K. Armsby Co., supra* (breach of warranty) ; *Stephany* v. *Hunt Bros. Co.,* 62 Cal.App. 638 [217 P. 797] ; *cf.: Muldrow* v. *Norris,* 2 Cal. 74 [56 Am.Dec. 313] ; *Eagle Lake Ice Co.* v. *Munson,* 73 Ind.App. 496 [127 N.E. 839].) On the

other hand, where the operation of an unestablished business is prevented or interrupted, damages for prospective profits that might otherwise have been made from its operation are not recoverable for the reason that their occurrence is uncertain, contingent and speculative. (*California Press Mfg. Co. v. Stafford Packing Co.*, 192 Cal. 479 [221 P. 345, 32 A.L.R. 114] (breach of warranty); *Martin v. Deetz*, 102 Cal. 55 [36 P. 368, 41 Am.St.Rep. 151] (breach of contract); *New York & Colorado Mining Co. v. Fraser*, 130 U.S. 611 [9 S.Ct. 665, 32 L.Ed. 1031] (breach of warranty); *Moulthrop & Stevens v. Hyett & Smith*, 105 Ala. 493 [17 So. 32, 53 Am.St. Rep. 139] (breach of warranty); *Winston Cigarette Machine Co. v. Wells-Whitehead Tobacco Co.*, 141 N.C. 284 [53 S.E. 885, 8 L.R.A.N.S. 255] (breach of contract); anno. 99 A.L.R. 938; note, 53 L.R.A. 38; see: *Gibson v. Hercules Mfg. etc. Co., Inc.*, 80 Cal.App. 689 [252 P. 780]; *Alpha Checkrower Co. v. Bradley & Co.*, 105 Iowa 537 [75 N.W. 369].) Consequently, it is generally held that a purchaser may not recover damages for the loss of prospective profits he anticipated making from the use of a machine which was not delivered or delivered in a worthless condition. (*California Press Mfg. Co. v. Stafford Packing Co., supra;* 34 A.L.R. 114; *cf.: Bryson v. McCone*, 121 Cal. 153 [53 P. 637] (breach of warranty).) But although generally objectionable for the reason that their estimation is conjectural and speculative, anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability. (*McConnell v. Corona City Water Co.*, 149 Cal. 60 [85 P. 929, 8 L.R.A.N.S. 1171]; *Lowe v. Yolo Co. Consol. Water Co.*, 157 Cal. 503 [108 P. 297]; *cf.: Pallett v. Murphy*, 131 Cal. 192 [63 P. 366]; *Crow v. San Joaquin etc. Irr. Co.*, 130 Cal. 309 [62 P. 562, 1058].) All of these cases recognize and apply the general principle that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent.

█ For the reason that Grupe's exclusive sales agency was a new venture, the record does not contain any evidence of a past volume of business in the sale of the particular machine in controversy, showing with reasonable probability that a fairly certain number of additional sales could have been made in the future. However, the evidence concerning his sales expense and his profit on sales made is admissible to show the net profit he would have received on additional sales.

And as it appears that, at the time the oil re-refining machines were determined to be useless for the purpose for which they were designed, he was negotiating for and had offers for the purchase of five additional machines at a price of $1,800 each, the trial court properly estimated the prospective net profit he lost on such contemplated resales. (Ann. Cas. 1917B 1194; 6 Ann.Cas. 976.)

The award of such profits, however, depends upon the existence of an additional factor upon which the trial court made no findings, namely, the absence of a reasonable substitute in the market. It is clear that if a machine of like quality as that warranted was reasonably available to Grupe, he could have completed the sales for which he was negotiating; in other words, the loss of profits from those sales could not be said to have been within the contemplation of the parties under such circumstances. Accordingly, the trial court was required to make a finding as to the availability of a reasonable substitute at the time in question.

The judgment is, therefore, reversed with directions to the trial court to determine the reasonable cost of the service agreed to be rendered by the respondent upon the sale of each machine made by him and upon the original findings as modified by additional findings to render judgment for the reduced amount recoverable by Grupe accordingly. Also, additional evidence should be offered and received tending to prove whether, at the time of the breach of warranty, there was a reasonable substitute for the machine sold by Glick, the award of future profits to be reconsidered in the light of that evidence and the rules stated in this opinion. The purported appeal from the order denying the motion to receive additional evidence is dismissed.

Shenk, J., Traynor, J., and Schauer, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in that portion of the majority decision which directs the trial court to ascertain the reasonable cost of the services to be rendered by respondent in servicing the machines in accordance with his agreements of sale. However, I dissent from that part which requires a retrial and findings on the issue of profits, particularly a finding as to the availability on the market of a reasonable substitute for the oil refining machines warranted. The evidence on that subject is conflicting and would support

a finding either way. The trial court has made a finding that there was no substitute and it must be approved. The finding to which I refer states that defendant knew of and contemplated the resale of the machines by plaintiff and "that as a direct and proximate result of the defective design and construction of said oil refining machines, as hereinbefore set forth, and the noncompliance with the warranties of defendants and their authorized agents and representatives, as hereinbefore set forth, plaintiff has been unable to make any other or additional sales of said oil re-refining machines and has been required to discontinue the effort, and has thereby suffered a loss of profits, to his further damage in the sum of one thousand ($1,000.00) dollars." While that finding is not directed specifically at the existence of a substitute on the market it is general and includes by necessary implication that element. In *Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840 [147 P.2d 558], the damages awarded to plaintiff were for loss of use of a truck. The court did not make an express finding that plaintiff was financially unable to pay the repair bill on the truck and regain its use, and hence, excused him from the duty of obtaining possession of his truck. Nevertheless, this court said at page 846:

"The trial court did not make an express finding regarding plaintiff's ability or inability in this regard. It did, however, in accord with the issues made by the pleadings, find 'that plaintiff was by reason of the negligence . . . of defendant . . . and the wrongful failure of . . . defendant . . . to pay said repair bill deprived of the use of his truck for a period of seventeen months.' *A finding that plaintiff was unable to pay the repair bill results by necessary implication therefrom.* (*Reiniger* v. *Hassell*, 216 Cal. 209, 211 [13 P.2d 737] ; *Tuso* v. *Green*, 194 Cal. 574, 582 [229 P. 327].) The essence of the rule denying recovery for losses which could have been prevented by the reasonable efforts and expenditures of plaintiff is that his conduct rather than that of defendants proximately caused such losses." (Emphasis added.) Likewise, in the instant case the findings made, included by necessary implication, a finding that there were no other substitute machines available to plaintiff, otherwise the damages found to have been suffered would not have been the direct and proximate result of the breach of warranty.