**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 13-1369**

————————————

VCA CENVET, INCORPORATED, now known as Antech Diagnostics
Incorporated,

               Plaintiff – Appellant,

     v.

CHADWELL ANIMAL HOSPITAL, LLC,

               Defendant – Appellee.

————————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  James K. Bredar, District Judge.
(1:11-cv-01763-JKB)

————————————

Argued:  December 10, 2013       Decided:  January 16, 2014

————————————

Before NIEMEYER, SHEDD, and KEENAN, Circuit Judges.

————————————

Affirmed in part, reversed in part, and remanded by unpublished
opinion.  Judge Shedd wrote the opinion, in which Judge Niemeyer
and Judge Keenan joined.

————————————

**ARGUED:** Brian E. Casey, BARNES & THORNBURG, LLP, South Bend,
Indiana, for Appellant.  Meighan Griffin Burton, WRIGHT,
CONSTABLE & SKEEN, LLP, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** David R. Pruitt, BARNES & THORNBURG LLP, South Bend,
Indiana; Patrick R. Buckler, SPENCE & BUCKLER, P.C., Towson,
Maryland, for Appellant.  Michael Gordon, WRIGHT, CONSTABLE &
SKEEN, LLP, Baltimore, Maryland, for Appellee.

————————————

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

I.

In December 2009, VCA Cenvet, Inc. (now known as "Antech Diagnostics, Inc."), a California corporation that provides commercial laboratory services, entered into a Lab Services Agreement ("LSA") with Chadwell Animal Hospital, LLC, a veterinary hospital in Abingdon, Maryland.[1] Under the LSA, Chadwell agreed to purchase lab services exclusively from Antech for four years in exchange for discounted prices and rebates. Antech agreed that if Chadwell used its services exclusively and purchased at least $78,000 worth of services per year (or $6,500 per month), Antech would issue Chadwell a "loyalty rebate" equal to 17% of its purchases each month.

In October 2010, Chadwell learned that VCA Cenvet was a subsidiary of the corporation VCA Antech. Chadwell's principals, Drs. Keith Gold and Ruby Schaupp, did not approve of Antech's business philosophy and decided they would no longer use Antech's services. Chadwell then entered into a lab services contract with another provider.

Antech filed this lawsuit in the United States District Court for the District of Maryland, alleging that Chadwell breached the LSA's exclusivity provision. Antech sought damages

---

[1] By its terms, the LSA is governed by California law.

3

equal to its expected gross revenue for the remainder of the LSA's term, plus the rebates and discounts it had already given Chadwell, totaling $273,000. In the alternative, Antech alleged that Chadwell had been unjustly enriched by the receipt of discounted rates premised on the completion of the LSA's four-year term. Antech sought restitution of the rebates and discounts Chadwell received prior to the breach, totaling $44,844. Chadwell conceded that it breached the LSA but argued that the terms of the contract limited Antech's recovery to $16,096.66, the amount of the rebates.

The parties filed cross-motions for summary judgment. Chadwell argued that the terms of the LSA limited Antech's damages to repayment of the rebates and that awarding Antech its lost profits would be unconscionable.[2] Antech appeared to argue that it was entitled to recover both the rebates and its expected gross revenue for the remainder of the four-year term.[3]

---

[2] Chadwell also argued that Antech was estopped from seeking damages beyond the rebates and that Antech's unjust enrichment claim failed as a matter of law because there was an express contract between the parties. The district court concluded there was no equitable or promissory estoppel or unjust enrichment claim. The parties have not appealed these decisions.

[3] As the district court noted, Antech's memorandum in support of its motion for summary judgment was "somewhat opaque" as to what judgment it would have the court enter. VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC, 2012 WL 4005542, at *6 (D. Md. Sept. 10, 2012).

4

The district court rejected Chadwell's argument that the default provision in Section 3.2 of the LSA limited Antech's recovery to repayment of the rebates. The court held that, if Section 3.2 was a liquidated damages provision, it was void as a penalty. The court also rejected Antech's argument that it was entitled to recover both the amount of the rebates and its expected gross revenue. The court then explained that neither party had "submitted the evidence or arguments necessary to truly test whether there is any dispute of material fact between them that would require resolution by a jury." 2012 WL 4005542, at *7. Accordingly, the district court held the motions for summary judgment in abeyance and ordered further briefing on the issue of lost profits.

In its supplemental briefing, Antech requested an order awarding it damages in the amount of its lost profits, totaling $198,644. In response, the district court held that Antech failed to establish the occurrence and extent of its lost profits with reasonable certainty and that an award of lost profits would result in Antech's unjust enrichment. The court further held that even if Antech had established lost profits of $198,644, such an award would be unconscionable. The district court then concluded that Antech could not recover the discounts it provided Chadwell under the LSA because it had provided Chadwell the same discounts before the parties entered into the

5

contract. Finally, the court held that Antech was entitled to recover $16,096.66 for the rebates. Accordingly, the district court granted Chadwell's motion for summary judgment, awarding Antech $16,096.66 in damages, and denied Antech's cross-motion.

On appeal, Antech argues that the district court erred in denying its summary judgment motion and in granting summary judgment for Chadwell. We may review the district court's denial of Antech's motion for summary judgment because it is appealed along with the order granting Chadwell's cross-motion. See Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 293 (4th Cir. 1998).

                                  II

We review both the grant of Chadwell's motion for summary judgment and the denial of Antech's motion for summary judgment de novo. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). When faced with cross-motions for summary judgment, we "review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). In considering each individual motion, we "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (internal quotation marks omitted). The party moving for summary judgment has the initial

burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Estate of Kimmell v. Seven Up Bottling Co. of Elkton, Inc., 993 F.2d 410, 412 (4th Cir. 1993).

## A.

We first address the district court's denial of Antech's motion for summary judgment, in which Antech sought $198,644 in lost profits. Antech calculated these profits by subtracting its estimated variable costs from its expected gross revenue for the remainder of the four-year term. To determine its expected revenue, Antech calculated its revenue under the LSA for 2010, then applied a 4% annual increase for 2011-2013. Antech next applied a constant 29% variable cost rate to to its expected revenue for 2010-2013. Antech argues that the district court erred in denying its summary judgment motion because Chadwell failed to submit its own evidence of Antech's lost profits and therefore failed to create a genuine issue of material fact. We disagree.

Under California law, a plaintiff in a breach of contract case may recover damages for lost future profits when the evidence makes their occurrence and extent reasonably certain. See Grupe v. Glick, 160 P.2d 832, 840 (Cal. 1945). The award of lost profits means the award of net, not gross, profits. Gerwin v. Se. Cal. Ass'n of Seventh Day Adventists, 92 Cal. Rptr. 111,

7

119 (Cal. Ct. App. 1971). "Net profits are the gains made from sales after deducting the value of the labor, materials, rents, and all expenses, together with the interest of the capital employed." Id. at 119-20 (internal quotation marks omitted).

Although Antech factored its variable costs into its formulation of lost profits, it failed to account for its fixed costs, which included "salaries & wages, contract labor, benefits, travel, consulting services, repairs & maintenance, freight & delivery, telephone, occupancy, rent, depreciation & amortization, and administrative costs." J.A. 337. Antech's proffered calculation of its lost profits is not sufficient to support the grant of Antech's summary judgment motion because California law confines a plaintiff's recovery for lost profits to his profits after deducting all of his expenses. See Gerwin, 92 Cal. Rptr. at 119-20. Antech did include an estimation of its fixed costs in the record, but because Antech failed to deduct all of its costs from its expected revenue when it moved for summary judgment, Antech has not established the occurrence and extent of its lost profits as a matter of law. Accordingly, we affirm the district court's denial of Antech's motion for summary judgment.[4]

---

[4] Although the district court denied Antech's motion for summary judgment based on the insufficiency of Antech's evidence of its lost profits, we are not confined to the grounds relied (Continued)

8

We next review the district court's grant of Chadwell's motion for summary judgment. Although the district court held that Section 3.2 of the LSA is not an enforceable liquidated damages provision, Chadwell argues on appeal that it was entitled to summary judgment because Section 3.2 is a liquidated damages clause that limits Antech's recovery to return of the rebates. In the alternative, Chadwell argues that summary judgment was appropriate because awarding Antech its claimed lost profits would be unconscionable and because Antech cannot establish its claim for lost profits with reasonable certainty. We disagree with each of these contentions.

1.

Chadwell first argues that this court should affirm the district court's grant of its motion for summary judgment because Section 3.2 of the LSA is a liquidated damages provision that limits Antech's recovery to return of the rebates.[5] The

_____

on by the district court and can affirm the district court's decision on any legal basis supported by the record. <u>Bryant v. Bell Atlantic Md., Inc.</u>, 288 F.3d 124, 132 (4th Cir. 2002).

[5] Section 3.2 of the LSA states:

> 3.2 Default. If (i) Animal Hospital Owner breaches the exclusivity provisions set forth in Section 1 hereof . . . then such shall constitute an event of default with respect to the Rebate. At any

(Continued)

purpose of a liquidated damages provision is to "stipulate[] a pre-estimate of damages in order that the parties may know with reasonable certainty the extent of liability for a breach of their contract." ABI, Inc. v. City of Los Angeles, 200 Cal. Rptr. 563, 573 (Cal. Ct. App. 1984). Under Section 3.2 of the LSA, Antech can recover the amount of the previously paid rebates upon Chadwell's breach of the LSA's exclusivity provision. This is not a liquidated damages provision because it provides only for a return of the rebates paid prior to the breach; it is not a "pre-estimate of damages" that Antech would suffer as a result of the breach. See id. There is simply no reasonable relationship between the amount of rebates that

---

time after the occurrence of an event of default, Antech may declare the entire amount of the Rebates previously paid to be billable and due immediately; NOTE HOWEVER, if the Animal Hospital Owner lab volume during any month falls below the stated rebate threshold in [sic], the rebate will not be apply [sic] to that month BUT that does not constitute default as long as the exclusivity provisions set forth in Section 1 are maintained. The remedies available to Antech hereunder are intended to compensate Antech for the rebate and discounts provided hereunder, which rebate and discounts would not have been provided unless Animal Hospital agreed to the Minimum Average Annual Fee requirements set forth herein, the requirements set forth in Section 1 regarding exclusivity, and the payment for Laboratory Services hereunder in a timely manner.

J.A. 23.

10

Antech may have paid before Chadwell's breach and the actual damages that Antech would suffer because of the breach. Accordingly, Section 3.2 of the LSA is not a liquidated damages provision, and it does not limit Antech's recovery to return of the rebates.

2.

Chadwell next argues that the district court properly granted summary judgment in its favor because awarding Antech its lost profits would be unconscionable. The district court concluded that it would be unconscionable to award Antech $198,644 in lost profits, explaining that the practical effect of such an award would be to require Chadwell to pay for its laboratory services twice for the three years remaining on the LSA's term—once to Antech for breaching the contract and once to the replacement laboratory. The district court also expressed concern that an award of lost profits would compensate Antech nearly $200,000 for not performing any services and that Antech did not detrimentally rely on the LSA because its agreement to provide services was not exclusive.

California law is clear that lost profits are recoverable as damages for breach of a contract where evidence makes their occurrence and extent reasonably certain, Sargon Enters., Inc. v. Univ. of S. Cal., 288 P.3d 1237, 1253 (Cal. 2012), and the damages are not unconscionable and grossly oppressive, see Cal.

11

Civil Code § 3359. A damages award is excessive "only when it is so grossly disproportionate to the injury suffered that the award appears to be the product of passion or prejudice," Saret-Cook v. Gilbert, Kelly, Crowley & Jennett, 88 Cal. Rptr. 2d 732, 746 (Cal. Ct. App. 1999).

The lost profits claimed by Antech are reasonably certain, and there is no suggestion they are the product of such passion or prejudice. We therefore hold that the district court erred in concluding that an award of Antech's lost profits would be unconscionable.[6]

3.

Finally, Chadwell argues that we should affirm the grant of summary judgment in its favor because Antech did not establish its lost profits with reasonable certainty. In considering Chadwell's summary judgment motion, we view all inferences in the light most favorable to Antech as the non-moving party, see Hardwick ex rel. Hardwick v. Heyward, 711 F.3d 426, 433 (4th Cir. 2013), keeping in mind that Chadwell bore the burden of establishing that Antech's recovery was limited to return of the

---

[6] The district court acknowledged in its opinion that each of the concerns it raised with respect to awarding Antech its lost profits is a "natural consequence[] of allowing plaintiffs to seek lost profits for breaches of requirements contracts like this one." VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC, 2013 WL 2151659, at *5 n.6 (D. Md. Feb. 22, 2013).

rebates as a matter of law, see Kimmell, 993 F.2d at 412. Because we find that Chadwell failed to meet this burden, we reverse the district court's grant of Chadwell's summary judgment motion.

Antech introduced evidence of its lost profits in the form of testimony from key executives, financial records detailing actual invoices for services performed before Chadwell breached the LSA, and documentation estimating Antech's expected revenue and projected costs. Viewing the evidence before the district court in the light most favorable to Antech, the record tended to show the occurrence and extent of Antech's lost profits. See Sargon Enters., 288 P.3d at 1253. Although Antech's calculation of its lost profits alone cannot support the damages award as a matter of law, we find that Antech has introduced evidence sufficient to allow a proper calculation damages. Accordingly, we reverse the grant of Chadwell's motion for summary judgment.

## III.

For the foregoing reasons, we affirm the denial of Antech's motion for summary judgment, reverse the grant of Chadwell's motion for summary judgment, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

13