[Civ. No. 14794.   Second Dist., Div. Three.   July 12, 1945.]

W. PEDERSON et al., Respondents, v. BENJAMIN GOLD-STEIN, Appellant.

Marcus C. Clark for Appellant.

Russell H. Pray and Samuel J. Nordorf for Respondents.

DESMOND, P. J.—Defendant Goldstein appeals from a judgment in the sum of $2,697.90 assessed against him in an action based upon a breach of warranty.　　He contends that the evidence is insufficient to sustain the judgment, but having examined the record we find that it is insufficient to sustain the appellant's contention.

In the month of November, 1943, appellant advertised Christmas trees at wholesale. Plaintiffs Pederson and Lawless, desiring to acquire some for sale in Long Beach called upon him at his place of business, a furniture store in Los Angeles, and acquainted him with their intention. He directed them to go to a store across the street where he had Christmas trees on display and where plaintiffs could examine them. After completing their inspection they returned to the furniture store and according to Lawless, ''We told him we would like to have some trees if he could furnish them just like he had on display over there and he said, 'Well, I can get you a truckload in the next day or two.' He gave us a price on a truckload of trees and we told him if he could furnish the same trees, we would take a whole truckload. . . . He said, 'When the trees come down, we will send them by truck to your place and you pay us when they arrive.' '' On November 27th the trees, 3,130 in number and tied in bundles, were delivered on a truck to a storeroom in Long Beach designated by plaintiffs. Goldstein was personally present at the time and while the trees were being unloaded by his helpers with the assistance of Pederson, Lawless went with him to a Long Beach bank, cashed a check for $3,200 and paid him that amount in cash as the agreed purchase price for the truckload of trees. Approximately a week later when plaintiffs undertook to put the trees on display and opened up the bundles the great majority were found to be branches or laterals. A landscape gardener testified that possibly 10 or 12 per cent of them were symmetrical in shape but the rest were ''laterals, suitable for some kind of decorations for the church or a big building to put alongside the wall. They would have been very good for that, if they had been in better condition.'' Lawless testified that ''The trees I saw in the storeroom were full, symmetrical trees. The ones that were delivered were lopsided. Looked more like branches or shoots. The majority. Some, a few, were good trees.'' Plaintiff Pederson testified that on December 6th he complained to appellant as to the quality of the trees, describing them as branches of very poor quality and ''He said that he would see we didn't lose any money on them, that we would return 500 trees. Call him up every third or fourth day, that he would help us dispose of the trees until we got rid of them all.'' Accordingly, plaintiffs next day delivered to appellant 532 unsatisfactory trees and took his receipt therefor, but when, on December 13, they

brought to him 551 trees or "laterals" he marked upon the receipt which he gave them "on consignment." Thereafter, on or about December 16th, plaintiffs loaded 1,562 trees on a truck and took them to appellant's place of business where Lawless handed him a letter reading as follows:

"With further reference to the 3130 Christmas trees purchased from you November 27, 1943, I am by motor truck tendering for return to you 1562 of the trees of said purchase, in addition to the 1083 trees previously returned to you, by reason of the fact that I find these trees are unsalable and unmerchantable.

"I have had experts examine these trees and they tell me that they are nothing more or less than lateral shoots or branches.

"These trees have been properly kept by me and I am, therefore, returning these trees to you for full credit at the purchase price.

"Upon your failure to accept them in return, please be advised that I shall place them on the market immediately for sale for whatever price they will bring and will look to you for damages for the difference in price, from what I have paid for them to you and whatever may be salvaged from the immediate sale of them.

"Very truly yours,
"10 :1e                     [signed]   F. W. Pederson
                            [signed]   F. M. Lawless"

Pederson testified that after appellant read this letter, "He said, 'Go ahead and sue.' He says, 'I'll pay a third. I'll pay a third of the attorney's fees.' He said, 'That is so I can sue Mr. Leichtag. It will help me win my case!'" It appeared at the trial that Mr. Leichtag of San Francisco had shipped the trees handled by appellant from Upper Lake in northern California and that appellant had reported to him the complaints made not only by the plaintiffs in this case but by other customers of his. As to this last load of trees Pederson testified that "when we went back and asked him if we could put them back over across the street where these other trees were on the boulevard, he said, 'Yes, go ahead and put them over there.' " Later, upon notice from the Los Angeles Fire Department that the trees should be removed as a fire hazard, appellant took them to the dump.

The following inquiry was made of the appellant during the

trial: "Did you at any time tell them the truckload that they would receive would be the same as the trees in your store on Glendale Boulevard?. A. All comes from the same place. THE COURT: Answer the question. Did you tell them that? (Answer read.) A. Yes."

The various quotations which we have made from the record and the provisions of the Uniform Sales Act, embodied in our law, particularly sections 1732 and 1735 of the Civil Code relating to warranties, furnished a sufficient basis for the court's decision in favor of the plaintiffs.

The trial court in fixing damages gave appellant credit in the sum of $502.10 for approximately 485 trees which plaintiffs sold or failed to return.

Judgment affirmed.

Shinn, J., and Wood (Parker), J., concurred.