**Appellate Department, Superior Court, San Diego**

[Civ. A. No. 146946.   Sept. 3, 1948.]

CHARLES A. FREE et al., Appellants, v. I. B. SLUSS et al., Respondents.

Glen H. Munkelt for Appellants.

Harden & Condra and Rollinson & Priess for Respondents.

BURCH, J.—The plaintiffs operate a retail grocery in Coronado. The defendant corporation is the manufacturer of soap. The individual defendants are a partnership wholesale broker and dealers in soap. The litigation grows out of a transaction which occurred in the fall of 1946 when soap was scarce and hard to obtain for the existing market. The uncontradicted testimony of one of the plaintiffs, Charles A. Free, establishes that Mr. James, one of the defendant dealers, brought to plaintiffs' grocery store, for the purposes of effecting a sale, a package of Frederick's Margarita Soap, which was a new product to plaintiffs. Mr. James represented that he had the answer to plaintiffs' want; that he had a good

product in a good looking package; that the soap was likely to stay upon the market; and he exhibited to plaintiffs at that time a guarantee of quality printed on the back of the package, and told plaintiffs that if they had any trouble to go ahead and refund the customer's purchase price and that the guarantee would take care of the plaintiffs. The plaintiffs purchased 25 cases. The witness testified "this Frederick's soap looked so good we took a chance on 25 cases." He was asked if he had made any public demonstration of that soap. His answer was, "We did. I got my wife's washing machine, and we put it right next to our checking stand, and we put a small amount of this soap in the washing machine, and it wasn't bad." Question: "Did you have any second dealing with Mr. James about the Frederick's Margarita soap?" Answer: "Yes. Mr. James came back to us. It was not too long after this first 25 cases of soap, and asked us how we had done, and we told him we had done fair on it, and asked us if we would like another shipment of the same soap. We told him that we would, and he said 'Well, I think we can get you 100 cases. A lot of smaller markets can't handle as much as we thought they were going to handle, so you sold all of this, so we can give you this 100 cases' and I took it. We received the shipment just a few days after that and paid for it."

On further substantial evidence the court found that the 100 cases of soap purchased were unfit for the purposes for which they were sold and were unmerchantable. It also appears in the record without contradiction that the plaintiffs offered to return the goods to both the dealers and to the manufacturers.

The guarantee of quality referred to above is as follows:

"FREDERICK
Margarita
All Purpose Granulated Soap
Guarantee of Quality

If Frederick's granulated soap does not meet with your entire approval your dealer will cheerfully refund the full purchase price upon return of the unused portion.

(Directions in various uses follow.)

FREDERICK SOAP CO. Los Angeles
California"

When, after discovery of unmerchantability, plaintiffs offered to return the soap to the manufacturer, the latter admitted that the necessary materials to put into the manufacture of a merchantable product were not available.

The fact is evidenced and not contradicted that the plaintiffs bought on the representations made by Mr. James during the negotiations as above set forth.

For the dealer it is contended that these representations were no part of the contract and that no warranty of quality for which the dealer is responsible to the grocerymen is involved.

Defendant manufacturer contends it is relieved by want of privity; and that there is no obligation arising against it in the circumstances either in contract or in tort.

If a cause of action is fairly proved by plaintiffs as against either or both the dealer and the manufacturer, they should have their remedy, no matter on what theory the complaint is drawn. It is the facts pleaded and not the theory of the case on which a plaintiff is to be granted or denied relief, when supported by sufficient evidence.

The circumstances attendant upon the two sales, whereby it is represented that the soap is the "same soap" as that previously demonstrated, makes the second sale one by sample. (46 Am.Jur. 552, Sales § 369; *Pederson* v. *Goldstein,* 70 Cal.App.2d 155 [160 P.2d 878]; *Taylor* v. *J. B. Hill Co.,* 31 Cal.2d 373 [189 P.2d 258].)

Moreover, the sale was one with express warranty of quality because the quality of the previous soap which had proved satisfactory was made the basis of the offer to sell and the acceptance of the goods. (*Taylor* v. *Hill Co.,* 31 Cal.2d 373 [189 P.2d 258].) It is unimportant that the warranty was only collateral to the principal contract. (*Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.,* 51 Cal.App.2d 520, 522, 523 [125 P.2d 113].)

Since there is no conflict in the evidence on these matters the findings of the trial court on the issue amount to but a conclusion of law. (*San Diego Trust & Savings Bank* v. *County of San Diego,* 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416].) We are of the opinion that the only conclusion which can be reached from a consideration of the undisputed evidence is that the dealer is liable to the plaintiffs.

As to the manufacturer we have concluded that the "guarantee of quality" printed upon each package of soap reached beyond the dealers to persons in the position of plain-

tiffs. It establishes the manufacturer's knowledge and intention that the goods should move through the usual channels of trade, and was a representation addressed to those who would deal in its product. It was under no obligation to make the guarantee, but having made it, it does not lie in its mouth to repudiate it when the condition of complete unsuitability for the market brings the guarantee into play.

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., § 1962, subd. 3.)

That the manufacturer had a financial interest in the immediate sale to plaintiffs is established. (*Southern Cal. Enterprises* v. *Walter & Co.,* 78 Cal.App.2d 750 [178 P.2d 785].) The evidence is uncontradicted that it marketed a product which it had manufactured without the necessary ingredients to produce merchantable soap. When plaintiffs offered to return the unsatisfactory soap the manufacturer so advised plaintiffs. Under the rule of *Paul* v. *Williams,* 64 Cal.App.2d 696 [149 P.2d 284], the manufacturer is not in position to deny liability. Though the trial court did not so construe the written instrument, the appellate court may determine its legal effect. (*Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335 [182 P.2d 182].)

The judgment appealed from is reversed as to both sets of defendants, with directions to amend the conclusions of law and to make and enter judgment for the plaintiffs as prayed for.

Turrentine, P. J., and Thompson, J., concurred.

A petition for rehearing was denied September 30, 1948.