## DISTRIBUIDORA DEL PACIFICO, S. A. v. GONZALEZ et al.

### No. 8621.

United States District Court
S. D. California, Central Division.

Feb. 6, 1950.

Manuel J. Avila, Manuel Ruiz, Jr., Los Angeles, Cal., for plaintiff.

Leo B. Ward, Los Angeles, Cal., for defendant Gonzalez.

Cosgrove, Cramer, Dicther & Rindge, Jesse R. O'Malley, Los Angeles, Cal., for defendant Citizens Nat. Trust & Savings Bank.

YANKWICH, District Judge.

The Complaint is in four counts. The first seeks recovery of $4,900, the second $8,446.75, the third, $3,100 and the fourth, —the only one against the Bank,—$4,900.

The plaintiff is a Mexican corporation, engaged in a general hardware business at Acapulco, State of Guerrero, Mexico.

In May, 1947, the plaintiff bought of defendant Gonzalez a quantity of barbed wire according to specifications which recited that the wire was to be galvanized barbed wire, two strands, No. 12, 4 barbs, each 4 inches.

A sample was sent to plaintiff. Payment was to be made by letter of credit, issued by the Banco del Sur, S. A., through the Banco Internacional, S. A., of Mexico City.

The letter of credit was received by the defendant bank on May 19, 1947. Gonzalez was notified orally on the same day and by letter on May 21, 1947. Payment was made on May 26, 1947.

The wire was shipped to Acapulco. After inspection, the plaintiff, on June 12, 1947, declined to accept it, claiming that it did not conform to the sample, was old, rusty, not galvanized. The wire remained in storage for several months. On April 10, 1948, the plaintiff notified Gonzalez that it was taking over the shipment to "reduce damages". They paid the customs charges, loading and other incidental charges and realized on the shipment the net sum of $1,620.60.

The lengthy discussions had at the preliminary stages and at the trial have resulted in either practical agreement or actual determination of most of the legal principles involved in this litigation. And the ultimate unsolved problems are matters of fact.

As to these, I am of the view that plaintiff has failed to prove a breach of contract on the part of defendant Gonzalez in the sale by sample of the 700 rolls of galvanized wire, or a breach of any duty or obligation on the part of defendant Citizens National Trust and Savings Bank in paying the letter of credit to defendant Gonzalez, which resulted in any damage to the plaintiff.

■ 1. As to defendant Gonzalez, the question to be determined is whether the barbed wire placed on board ship at San Pedro, California, for delivery to plaintiff at Acapulco, Mexico, under the contract between Gonzalez and the plaintiff, conformed to the sample previously sent to the plaintiff. For this is the foundation of the complaint. California Civil Code, Sec. 1789; and see, Bower-Geibel Wholesale Co. v. Sears-Roebuck & Co., 1946, D.C. Cal., 69 F.Supp. 158, 159; Pederson v. Goldstein, 1945, 70 Cal.App.2d 155, 160 P. 2d 878; Grupe v. Glick, 1945, 26 Cal.2d 680, 160 P.2d 832.

■ A comparison of the two small strands of wire allegedly taken at Acapulco by a Mexican notary, in the presence of the plaintiff, from the large shipment of 700 rolls of approximately 100 pounds each, with the samples according to which the sale was made, gives the impression that there is no conformity. But such comparison is of little probative value. To be effective, a comparison should be based upon a representative selection of samples from a sufficient number of rolls that would show the true condition. As it is apparent that the defects in the wire, of which the plaintiff complains, if they existed, were not due to exposure, but, to faulty manufacture, and it is contended, that, among other things, the wire was *not* galvanized,—a defect which, if existent, *would run through the whole shipment,*—the only fair method

would have been to save several representative rolls and bring them into court. The plaintiff came to court for the trial from Mexico. And a roll, or even several rolls could *easily* have been stored, with proper assurances as to identity, such as were taken by notarizing the small samples, transported from Mexico and produced in court. Otherwise, the testimony of the plaintiff as to the general condition of the shipment, and that of the witness Joshua Pintel carry little weight. And this is especially true when we have the explicit testimony of the employee of Gonzalez who saw and inspected the shipment on the dock at Long Beach before it left, who had assisted in the preparation for shipment of this and other barbed wire, and who testified *positively* that the wire was bright, new and showed no defects.

Unchallenged corroboration of this is found in the testimony of Carl H. Burke, a disinterested witness, who was an employee of Koppel Brothers, a concern specializing in weighing, surveying and making reports about the condition of merchandise before export. This firm was employed by Gonzalez before the merchandise was placed on board ship, to examine its condition and issue a certificate. This they did. And their employee, Burke, testified fully as to the good condition of the wire.

■ This contemporaneous act establishing the condition of the merchandise, *at a time when no dispute had arisen,* through a disinterested person representing a firm employed especially to make a survey, not only contradicts all the testimony on behalf of the plaintiff, but is *testimony of the highest probative value,* which, standing unchallenged, shows conclusively that the barbed wire conformed to sample. Indeed, counsel for the plaintiff, realizing this, sought to explain the situation by contending that the wire examined by the witness Burke *might have been* another shipment. But, as stated at the argument, there is no evidence which would warrant such an inference.

For while it is true that there are two bills of lading concerning the shipment, this was due to the fact that the first vessel on which the wire was located was libeled

and the cargo was transferred to another one, and each ship made out a bill of lading. There is no evidence of substitution or change. The bills of lading covered the same merchandise.

2. It is equally clear that no recovery can be had against the defendant Bank. There was no direct contractual relation between the Bank and the plaintiff. The Bank, through its Mexican banking representative, received the irrevocable letter of credit payable to the defendant Gonzalez. Upon its receipt, Gonzalez was notified on May 19, 1947. This notification bound the Bank to honor the letter of credit upon surrender of certain instruments, which the forwarding Bank had made a condition. 9 C.J.S., Banks and Banking, § 175-179. These instruments were actually supplied. It is true that before the money was paid over, the forwarding Bank sent a communication to the defendant Bank asking them "to notice and notify the beneficiary that the mentioned merchandise must be new". (tomen nota y notifique al beneficiario de que la mercancia que ampara debe entenderse nueva.) (Ex. 13) Assuming that the conditions attached to a letter of credit are subject to modification before notification, cf. 9 C.J.S., Banks and Banking, § 177, there is no writing in the record which required the defendant Bank to withhold payment unless the *additional written guarantee* was given by Gonzalez that the shipment would be new. And neither from the original instructions of the forwarding Bank, nor from what occurred subsequently, can we infer an obligation on the part of the defendant Bank to inspect the merchandise and see that it conformed to the sample. See, 9 C.J.S., Banks and Banking, § 178(b).

In view of the conclusions just stated, the question whether the plaintiff, by taking possession of the property, which was not perishable and stood in no danger of being lost through failure to take it out of the possession of the Mexican customs,— waived the rescission, ceases to have much significance, Restatement of Contracts, sec. 401. Cf. Karapetian v. Carolan, 1948, 83 Cal.App.2d 344, 188 P.2d 809, 1 A.L.R.2d 1075. However, the action of the plaintiff in taking possession, serves to emphasize the point that this sale was an ordinary sale not made with knowledge by the defendants of the existence of any particular contracts of resale, and that, therefore, loss of prospective profits is not a criterion of damage. The only damages recoverable would be those prescribed by Subdivision 7 of Section 1789 of the California Civil Code. The "special circumstances" of which the section speaks and which would warrant a greater recovery, are absent. California Civil Code, Sec. 1789, Subd. 7; and see, Yankwich On Pleading and Procedure, 1926, Sec. 172, p. 304; Overstreet v. Merritt, 1921, 186 Cal. 494, 504, 200 P. 11; Buxbom v. Smith, 1947, 23 Cal.2d 535, 145 P. 2d 305; Grupe v. Glick, 1945, 26 Cal.2d 680, 160 P.2d 832. The plaintiff by taking possession of the wire and disposing of it as "distress" merchandise, placed the defendant Gonzalez in the position where he *could not*, at the trial, produce any physical evidence of the actual condition of his own merchandise, which could easily have been stored at the defendant's expense and been available in Mexico, or been transported to the United States, in whole or in part, for proof of its condition. As it was incumbent upon the plaintiff to establish the defective quality of the wire, he has only himself to blame if, by his own act, *which he was not legally required to perform*, he made it impossible not only for himself, but for the defendant Gonzalez as well, to produce other physical evidence of the actual condition of the wire than the two insignificant strands which have so little meaning.

Judgment will, therefore, be for the defendants.

Findings and Judgment to be prepared by counsel for the defendants under Local Rule 7.